REULAND, et al, Appellants, v. INDEPENDENT DISTRICT OF WHITE LAKE, et al, Respondents.

(269 N. W. 484.)

(File No. 8011.   Opinion filed November 9, 1936.)

*Fellows & Fellows* and *Morgan & Whiting*, all of Mitchell, for Appellants.

*W. D. Shouse*, of White Lake, and *Miller & Miller*, of Mitchell, for Respondents.

CAMPBELL, J.   Defendant-respondent White Lake School District is organized under the laws of this state as an independent school district and has within its boundaries a municipal corporation of the second class.   On October 9, 1935, there was presented to the board of education of the school district and filed with the clerk thereof a duly verified petition, signed by more than 20 per cent. of the electors of such school district who were named as owners of real property therein in the tax lists for the year 1934, which petition asked that the board of education of the district "issue bonds in the principal amount of $30,000 for the purpose of providing public school building."   On the next day the board of education adopted a resolution calling a special election to submit to the voters the question of issuing bonds in the

sum of $30,000 "to provide an adequate building and equipment and furniture for school purposes." The election was thereafter held, and the question in the form stated in the resolution of the board of education was submitted to the electors and a canvass of the vote on November 11 determined a total of 395 votes cast, 242 of which were in favor of the issuance of the bonds. It thus appearing that five more than the necessary three-fifths (section 100, c. 138, Laws 1931) of all ballots cast upon the question were in favor of issuing bonds, the board adopted a resolution authorizing the issuance thereof, accepting an offer of the United States government to purchase the same, and levying a tax upon the property of the district to establish an interest and a sinking fund for payment. Before the bonds were in fact issued, however, plaintiffs herein, who are residents, electors, and taxpayers of the school district, instituted the present action in the circuit court to enjoin such issuance. Plaintiffs by their complaint allege that the proceedings looking toward the issuance of the bonds were illegal and defective in many particulars, including the point that the petition of the property-owning electors filed with the board of education, as hereinbefore recited, was not sufficient in form or substance to justify the calling of the special election or the submission to the voters of the question which in fact was submitted. Issue being duly joined, the matter came on for trial before the court. All facts were fully found and are without substantial dispute. Upon those facts the learned trial judge concluded, as a matter of law, that all the proceedings looking toward the issuance of the bonds were legal and valid save only that the petition of the elector property owners was insufficient. He further concluded as a matter of law, however, that, although the filing of a proper petition was a condition precedent to the issuance of the bonds, it was not a condition precedent to the calling of the election and might be filed, even after the election, at any time before the actual issuance. Upon this view, and in consideration of the fact that the bonds had not yet been issued and that no proper petition had yet been filed, the court made the following conclusion of law: "That the plaintiffs are entitled to an injunction against said Independent District of White Lake, and the officers thereof, enjoining them from issuing said bonds or any part thereof, unless and until a new verified petition signed by not less than twenty per

cent. of the electors in said district who are named as owners of real property in the tax list or lists of the last preceding year asking for the issuing of said bonds for the purpose of providing an adequate building and equipment and furniture for school purposes for said district, has been presented to the Board of Education of said district and filed with the Clerk of said Board." Pursuant to this conclusion a sort of conditional judgment was entered awarding to plaintiffs a permanent injunction against the issuance of the bonds "unless and until a verified petition signed by not less than 20 per cent. of all the electors of such school district who are named as owners of real property in the tax list or lists of the last preceding year, asking for the issuance of said bonds for the purpose of providing an adequate building and equipment and furniture for school purposes for said district, has been filed with the Clerk of the Board of Education of said Independent School District within 30 days from and after the date of the entry of this judgment." It is conceded by all parties that a petition for the issuance of said bonds, sufficient in all respects in form and substance, was filed with the clerk of the board of education of the school district within thirty days after the entry of this judgment. From so much of the judgment as is unfavorable to their contentions plaintiffs have appealed upon the judgment roll, and the question is whether the facts as found support the conclusions and judgment.

The form of the judgment is novel, and under our practice we doubt if it is permissible, although the object which the court was seeking to accomplish is quite apparent. The judgment is really interlocutory in nature rather than final. Our procedure contemplates a final judgment determining the rights of the parties according to existent facts before the court at the time of the adjudication. Cf. Western Building Co. v. J. C. Penney Co. (1932) 60 S. D. 630, 245 N. W. 909. We believe, however, that further discussion or consideration of this point is unnecessary for the disposition of this appeal.

We think the first question that should be determined is whether or not the court below was correct in holding, as a matter of law, that the filing of a sufficient and adequate petition of property-owning electors, while a condition precedent to the

issuance of bonds, was not a condition precedent to a valid election on the question of bond issuance. Respondents argue that the petition of October 9 was in fact and law a valid and sufficient petition whether it was a condition precedent to calling the election or merely a condition precedent to the issuance of the bonds, or both. The trial judge has ruled otherwise, and we think he was correct. If it is the law, either that an election cannot be called to vote upon a bond issue or that bonds cannot be issued until there has been filed a proper "petition to issue such bonds," it seems very clear that a petition to issue bonds "for the purpose of providing public school building" cannot support or justify the issuance of bonds for the broader and more comprehensive purposes of providing "an adequate building and equipment and furniture for school purposes." In any event, plaintiff-appellants do not challenge the ruling of the trial court on this particular point, it being favorable to them, and defendants-respondents, having perfected no appeal on their part, are not in position to raise the question. Cf. Wood v. McCain (1919) 41 S. D. 418, 171 N.W. 82. We revert then to the question of whether the filing of a sufficient and legal petition is a condition precedent to the calling of a valid bond election as appellants maintain, or whether it is a condition precedent only to the issuance of the bonds as respondents maintain and as the trial court held. For the solution of this question some consideration of relevant statutes is essential.

After the adoption of the Revised Code of 1919 bonds could be issued by either common or independent school districts for certain specified purposes upon majority vote of the electors. Sections 7593, 7606, R. C. 1919. There was no requirement whatever for a petition of property owners, and so far as concerned independent districts, no requirement for a petition of any kind. In common school districts a prerequisite to submitting the bond issue question to a vote of the district was a petition by one-third of the resident voters. Section 7592, R. C. 1919. In independent districts a bond election might be called by resolution of the board of education whenever they deemed it necessary and expedient. Section 7603, R. C. 1919. By an amendatory act (chapter 166, Laws 1923) the vote necessary to carry a bond election in both common and independent school districts was increased from a mere majority of

all votes cast on the proposition to a three-fifths majority. The first recognition of any interest of property-owning voters in the matter, as distinguished from voters in general (not only in school districts but likewise in counties and townships) came with the enactment of chapter 65, Laws 1927, which was a statute of general application, reading as follows: "No bonds shall be issued by any county, township, or school district, within this state unless 40 per cent of all the resident freeholder voters of such county, township or school district as the case may be, as evidenced by the assessment roll of the preceding calendar year, shall petition the proper officers thereof to issue the same, and such petition shall have attached thereto an affidavit verifying the genuineness of the signatures thereto; provided, however, that nothing herein shall effect any change in any other proceedings now required by law not in conflict herewith; and provided, further, that in the case of a county, or any independent School District having within its boundaries any Municipal Corporation of the first or second class, a petition of 20 percent of the resident freeholder voters thereof shall be sufficient, provided, that nothing herein shall effect the issue of refunding bonds or seed grain bonds as now provided by law." It will be observed that this statute does not purport to have anything to do with the manner or method of calling bond elections, but merely creates a further condition precedent to bond issuance. In other words, after the effective date of the 1927 act, in order to have a valid bond issue, there must be an election as required by the previous law (pursuant to voters' petition in common school districts and pursuant to board resolution in independent districts); a three-fifths vote of the district electors favoring the issue pursuant to the 1923 amendment; and in addition the petition of resident freeholder voters provided for by the 1927 act. This condition continued unchanged up to the time of the enactment of the comprehensive Public School Law of 1931 (chapter 138, Laws 1931), and indeed it was in no manner substantially changed by the act of 1931 so far as concerns any particulars relevant to this case. By section 97 of chapter 138 the previously existing methods for calling bond elections were perpetuated. By section 100 the previously existing requirement of a three-fifths majority at the bond election was continued. By section 98 the essence of chapter 65, Laws 1927, in so far as

it related to school districts, was repeated and re-enacted. The same percentages of signers continued to be required, and about the only observable difference was that, instead of describing the petitioners as "resident freeholder voters * * * as evidenced by the assessment roll of the preceding calendar year," they were described in section 98 as "the electors * * * named and designated as owners of real property within the school district in the tax list or lists of the last preceding year." Chapter 138, Laws 1931, was approved on March 5, 1931. It also contained a specific provision in section 296 thereof as follows: "other statutes enacted at the present session of the legislature shall be deemed to be enacted subsequently to the enactment of this chapter, and if such statutes repeal, amend, contravene or are inconsistent with the provisions of this act, the provisions of such statute shall prevail." By the same session of the Legislature another act relating to this subject-matter was passed which must be deemed subsequent to chapter 138, not only because of the above-quoted provision, but also because it was in fact subsequent in point of time, being approved March 11, 1931. This appears in the session law as chapter 91, Laws 1931, and is in form an amendment of chapter 65 of the Laws of 1927. That chapter 91, amending chapter 65, Laws 1927, was not enacted without contemplation and consideration of the previously enacted General School Law of 1931 is evidenced by the fact that the petitioners are described in chapter 91, Laws 1931, not in the phraseology of chapter 65, Laws 1927, but in the precise language which originated in section 98 of chapter 138, Laws 1931, to-wit, as "all the electors * * * who are named as owners of real property in the tax list or lists of the last preceding year." The portion of chapter 91, Laws 1931 material to our present purposes is section 2 thereof, which reads as follows: "Such petition may consist of several separate petitions similarly worded and attached together. Such petition, if it shall consist of only one petition, shall have attached to it the affidavit of the person circulating it, verifying the genuineness of the signatures thereto, and if such petition shall consist of separate petitions attached together as hereinbefore provided, each of said separate petitions shall have attached thereto the affidavit of the person circulating it, verifying the genuineness of the signatures thereto, and such petition shall be filed as aforesaid before any election

shall be called for the purpose of voting upon the issuance of said bonds." Chapter 91, Laws 1931 contains the usual declaration that 'All acts or parts of acts in conflict herewith are hereby repealed," and although it purported specifically to amend chapter 65, Laws 1927, it seems very clear, under the circumstances, that the necessary result and effect of its passage was the substitution of its terms and conditions so far as concerns school districts for the transcription from chapter 65, Laws 1927, which had been inserted in the previously passed General School Law of 1931 as section 98 thereof. It seems further very clear that chapter 91, Laws 1931, must likewise be read and construed in connection with section 97 of chapter 138, Laws 1931, and that its necessary result and effect is to change and modify the provisions of said section 97 by adding to the requirements there stated as conditions precedent for calling a bond election the requirement of the petition contemplated by chapter 91. By subsequent act (chapter 64, Laws 1935) chapter 65, Laws 1927, as amended by chapter 91, Laws 1931, was again amended in some particulars not material to the present discussion. It continued to provide, in substance, that no bonds should be issued by any independent school district having within its boundaries a municipal corporation of the second class unless 20 per cent. of all the electors of such district named as owners of real property in the tax lists of the last preceding year should file a petition to issue such bonds, and continued to require in plain words that "such petition shall be filed as aforesaid before any election shall be called for the purpose of voting upon the issuance of said bonds." The language last quoted is simple, easy to understand, and mandatory in form. To construe it out of the statute in this case and in the light of the legislative history is, in our opinion, entirely unwarranted, and would amount to judicial repeal. It is elementary that a school district cannot issue bonds excepting by statutory permission. The Legislature, which alone can grant the power, is entitled to prescribe the terms and conditions of its exercise, and it is the undoubted general rule that a compliance with all the requirements of the provisions of law conferring the power is essential to a valid exercise of such power. We can perceive no justification for destroying, under the guise of construction, the plain words of the legislative act which requires beyond the possibility of mis-

understanding that the petition "shall be filed as aforesaid before any election shall be called."

■ Respondents argue that chapter 65, Laws 1927, is unconstitutional and void because of a defective title, and, consequently, that there can be no validity either to chapter 91, Laws 1931, purporting to amend it, or to chapter 64, Laws 1935, purporting to amend the 1927 law as amended by the 1931 law. The title of the 1927 act is as follows: "An Act Entitled, An Act Relating to Procedure in Bonding Counties, Townships, School Districts, and Requiring Petition of Freeholders as Part of Such Procedure." It will be noted that the title speaks of "petition of freeholders" whereas the body of the act requires the petitioners to be a certain per cent of "resident freeholder voters." Respondents urge that the title does not sufficiently foreshadow the provisions of the act under the requirements of section 21 of article 3 of the Constitution of this state. This point, we think, is not well taken. The fact that the title speaks of "petition of freeholders" does not mean that the act itself must require a petition of all conceivable freeholders in order to fall within the title. There is no harm in the fact that the petition is required to be signed only by 40 ( or in some instances 20) per cent. of the freeholders. Neither do we think there is any harmful departure from the title in the fact that the petitioners are to be such freeholders as are also resident voters. It is urged that the title foreshadows a petition of freeholders, whereas the act itself requires a petition of voters. Certainly a "resident freeholder voter" must be a freeholder, and we cannot see that it makes any difference whether he is described as a "resident freeholder voter" or as a "resident voting freeholder." We find no merit in the objections urged to the title of the 1927 law.

■ The views hereinbefore expressed are decisive of the appeal and render it unnecessary to consider other matters presented by the briefs. The bond issue in question can never have validity because of the lack of the filing of a proper petition prior to the calling of the election. The judgment appealed from is therefore reversed, and the cause is remanded, with directions to the trial court to enter conclusions of law upon the present findings of fact in harmony with this opinion, and upon such findings and conclusions to enter a judgment awarding appellants the relief

sought in their complaint and permanently enjoining the issuance of the bonds without qualification or condition.

All the Judges concur, excepting POLLEY, P. J., who takes no part, having been absent at the time of oral argument.