In re WHEELING'S ESTATE.
SMITH v. MAXEY et al.

No. 32171. Dec. 23, 1946.

*175 P. 2d 317.*

A. R. Thompson and A. K. Little, both of Oklahoma City, for plaintiff in error.

William T. Billups and Maurice M. Thomas, both of Oklahoma City, for defendants in error.

DAVISON, J. This case presents an appeal from a decree of the district court of Oklahoma county affirming a decree of the county court admitting the will of Charles Frederick Wheeling to probate. The plaintiff in error, Bertha Wheeling Smith, a sister of the testator, was the contestant, and H. Truman Maxey, resident manager of the Baptist Orphans' Home, and the Baptist General Convention for the benefit of the Baptist Orphans' Home of Oklahoma City were the proponents. The parties will be referred to herein as contestant and proponents.

The testator was 80 years of age in December, 1942, when, because of ill health, he was sent to the Wesley Hospital in Oklahoma City. The testator left no wife, no children, no father nor mother surviving him. His nearest relatives were the contestant, who resided

in Illinois, and a brother whose home was in Missouri. Upon testator being sent to the hospital, the contestant was notified of his illness by an acquaintance of testator. The contestant came to Oklahoma City, and on January 20, 1943, she filed a petition in the county court of Oklahoma City praying therein for the appointment of a guardian of the person and estate of the testator. The reasons given for the appointment of such guardian were as follows: "that he is more than 80 years of age and is now ill and confined in a hospital at Oklahoma City, Oklahoma; that by reason of age and infirmities he is neither mentally nor physically competent to manage his property, or to properly care for himself. . . ." While the testator was still in the hospital, the county court, on January 26. 1943, made an order adjudging him to be an incompetent. On said date a guardian was appointed over his person and estate.

The testator filed a petition for restoration to competency in April, 1943, and after a hearing thereon his petition was denied, the order of such denial being made on October 4, 1943. In January, 1944, the testator filed his second application for restoration to competency, and on January 18, 1944, this application was denied as to his estate, but the guardian discharged as to his person. In said order it was provided that "said (testator) is now restored to capacity to conduct his personal affairs; to live where he pleases; employ a doctor of his own choosing; pay his own personal bills, and to deposit, maintain and check upon his personal bank account if he so desires."

On September 16, 1943, the testator executed the will in controversy in which, after directing payment of debts and funeral expenses and burial at Litchfield, Illinois, he bequeathed one dollar each to contestant and his brother. He then bequeathed all the residue of his property to the Baptist General Convention of the State of Oklahoma for the use and benefit of the Baptist Orphans' Home of Oklahoma City, and appointed H. Truman Maxey, superintendent of the home, as executor. The testator's estate consisted of carpenter tools, stock in the American Telephone & Telegraph Company, and other personal property, all of the approximate value of $11,000. The testator died on May 9, 1944.

The contestant relies upon the following assignments of error for reversal of the judgment:

"1. The order of the county court of October 4, 1943, adjudging that the testator was not restored to capacity is res judicata as to the capacity of the testator to execute this will. The order of January 18, 1944, is likewise res judicata.

"2. The decree of the court below is against the weight of the evidence. The evidence overwhelmingly establishes incapacity to make a will.

"3. Where a person, whose conduct in many respects is apparently normal, has delusions which influence him to make a will which he would not otherwise have made, the will is void for want of testamentary capacity."

We will discuss each of the above propositions in the order presented.

We are of the opinion that contestant's first proposition is without merit. The doctrine of res judicata is inapplicable to the facts in the present case. The facts in the present case are very similar to those in the case of In re Shipman's Estate, 184 Okla. 56, 85 P. 2d 317. The contentions of the parties are almost identical. Therein we held that an adjudication of a testator's mental incompetency to manage his property is to be considered in the determination of his testamentary capacity, but such evidence is not conclusive proof thereof. In the petition in the cited case it was alleged that the testator was almost blind and that because of his physical and mental condition he was mentally incompetent to manage his property, to direct his personal and business affairs, or to properly care for his maintenance and livelihood. In that

case, as in the present case, the testator, some 18 months after he had been adjudged to have been an incompetent, filed his petition asking the county court to restore him to competency and to discharge his guardian. At a hearing had on said petition, the county court refused to restore the testator's competency. The will in that case was executed a few days later, and at a time when the testator was still under guardianship for incompetency. In that case the district court admitted the will to probate and the judgment was affirmed by this court on appeal. On this particular phase of the case the above-cited case is decisive. Also, see the case of In re Nitey's Estate, 175 Okla. 389, 53 P. 2d 215.

The doctrine of res judicata does not apply in the present case for the further reason that the essential elements of res judicata are not herein present. The capacity of the testator to make a will was not before the county court at the time he was declared an incompetent, nor at the time of the hearing on the applications for restoration. The issue on the probate of the will goes to his testamentary capacity at the time of the execution thereof. In this connection see Hill v. Buckholtz, State ex rel. Com'rs of Land Office, 140 Okla. 196, 183 P. 42; Fullerton v. 75 Okla. 122, 282 P. 674, and Johnson v. Whelan, 186 Okla. 511, 98 P. 2d 1103.

In order to determine the correctness of contestant's second assignment of error, it will be necessary to discuss pertinent parts of the evidence.

The testator left the Wesley Hospital during the early part of 1943 and was placed in the Robertson Convalescent Home, where he stayed until the early part of 1944. This home was owned and operated by a private individual and some of the help in this home consisted of nurses, none of whom were graduate nurses. There is no dispute in the evidence on several points. The evidence was definitely to the effect that the testator was resentful of the fact that the contestant had had him declared an incompetent and that he felt that he had been mistreated by contestant. The evidence is also certain that the testator was unhappy as a patient in the rest home. He apparently didn't like any feature of the rest home; he was resentful of being an involuntary patient there and he protested the cost of such service. He also seemed to have formed a personal dislike for the attendants. The expense of his board, room and maintenance at the home was more than double the amount he had been in the habit of paying. He also made numerous complaints to the effect that he was being underfed and overcharged.

The evidence of the lay witnesses is in conflict as to his personal habits, conduct, memory, neatness of appearance, understanding of business affairs, knowledge of current events, value of money and his testamentary capacity.

The medical testimony is extremely conflicting. Two doctors testified for the contestant. One of these doctors, B. H. Moore, testified that he first knew the testator in the latter part of 1942, when testator was sent to the Wesley Hospital. This witness also saw and administered treatment to the testator on a number of occasions when he was in the Robertson Home. This witness further testified that testator was suffering from senile dementia from old age and physical disabilities to such an extent that he could not have had testamentary capacity at the time the will was made. This particular witness testified that testator's condition was such that he did not think he would ever know what year he was living in. On cross-examination, however, this witness admitted that the testator came to downtown Oklahoma City unaccompanied on very frequent occasions. This witness further admitted that testator was "vengeful from the very beginning and continued so, because he was put under a guardianship". The other doctor who testified on behalf of contestant testified that the testator had numerous physical ailments and in his opinion was

mentally confused and senile; that testator might be capable of making an intelligent will, knowing to whom he was giving his property and the extent of his property, but doubted if he would remember all he included in the instrument.

Three physicians testified on behalf of the proponents. Their testimony was entirely contradictory to the testimony of the two doctors who testified for contestants. These three doctors had been called to examine the testator to determine his testamentary capacity several days before the will was executed. One of these doctors was 86 years of age and had served for 18 years as a member of the insanity board of Oklahoma county. He was a member of the Presbyterian Church and still active in his profession. Another witness was a member of the Board of Stewards of St. Luke's Methodist Church and had been practicing his profession in Oklahoma City for a number of years. The third medical witness had practiced his profession in Oklahoma City for many years. The testimony of all of these witnesses was to the effect that they had given the testator various tests, both physical and mental, to determine his testamentary capactiy. Each of these witnesses testified in substance that testator had testamentary capacity; that he was capable of making a will and transacting any kind of business necessary for him to transact; that his mentality was normal, his memory good, and he showed no signs of senility; that he had the mental capacity to understand the nature and consequences of his acts at the time of the making of the will.

The scrivener of the will testified that he got acquainted with the testator when testator first came to his law office in the early part of 1943 for the purpose of employing him to represent testator in filing his petition for his restoration to competency. This witness stated that testator mentioned the making of his will early that summer, but said nothing more about the will until the following September. The testator had stated that he had been out to the Baptist Orphans' Home the year before and he was thinking about leaving his property to the children of that home. At this time the witness suggested that the testator go to the home for further observation. Witness then got in touch with Mr. Maxey, manager of the home, and arranged for testator to again visit the home. At that time the witness was not acquainted with Mr. Maxey. After visiting the home immediately prior to the execution of the will, the witness testified that the testator told him "those buildings are permanent, and it is a fine thing and my money ought to go to support those little children. I made my money in Oklahoma, and I want it to stay here, and I have always been interested in children and never had any of my own, and I want it to go out there." The testator belonged to the Lutheran Church, but stated to the witness that his church did not have an orphanage in Oklahoma.

After the foregoing conversation the witness suggested the meeting with the doctors who testified for proponents for the hereinbefore referred to examination of the testator, and upon being advised of testator's testamentary competency, witness prepared the will at testator's request and same was duly executed the day following its preparation. This witness was not a member of the Baptist Church and had no connection therewith. Our attention has been called to the fact, however, that he is one of the attorneys for proponents.

A transcript of the evidence of the testator taken at the hearing of January 18, 1944, upon his application for restoration to capacity, was introduced in evidence. A reading of this testimony is rather convincing that the testator at that time had a very good memory, and is convincing that the two physicians who testified on behalf of contestant greatly underrated testator's memory and business ability.

It is significant that the county judge who saw and heard the testator testify at the last hearing on his application for restoration to competency admitted the will to probate. The trial judge, on appeal, had the opportunity of observing and studying the witnesses on the stand; their candor or lack thereof; their apparent bias or prejudice and their general demeanor. Both courts found, by their judgments, that the testator met the necessary legal tests under the cases of In re Shipman's Estate and In re Nitey's Estate, supra, to enable him to make a valid will.

Contestant's third proposition is largely a continuation of her second proposition. She cites one Oklahoma case, In re Mason's Estate, 185 Okla. 278, 91 P. 2d 657, in support of this assignment of error. This case is authority for the following rule of law:

"It is not sufficient, to defeat a will, merely to establish that the testator was a victim of some delusion. The evidence must go further and establish that the will itself was the product of that delusion and that the testator devised his property in a way which, except for that delusion, he would not have done."

Under the facts in the present case we are unable to see where the cited case is helpful to contestant. There is no evidence here to indicate that the testator was under any delusion. In the cited case, both the county and district courts admitted the will to probate and this court found that the judgment was not against the clear weight of the evidence and affirmed same.

It appears that the will in the present case was duly executed and in accordance with the exact wishes and request of the testator, and upon his sole volition. The judgment of the trial court on the issue of testamentary capacity and in admitting the will to probate is not against the clear weight of the evidence and therefore cannot be disturbed. In re Shipman's Estate, supra; In re Will of Son-se-gra, 78 Okla. 213, 189 P. 865.

The judgment is affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, CORN, and ARNOLD, JJ., concur.