Lawrence BELL and Myrtle Bell, Plaintiffs and Respondents,

v.

CARDINAL DRILLING CO., a foreign corporation, Defendant and Appellant.

No. 7654.

Supreme Court of North Dakota.

Sept. 24, 1957.

Strutz, Jansonius & Fleck, Bismarck, for appellant.

Friederich & Ziegler, Rugby, for respondents.

SATHRE, Judge.

The plaintiffs bring this action against the defendant for damages resulting from alleged breach of contract by the defendants.

The plaintiffs are the owners of certain real property situated in the county of Pierce, State of North Dakota. The parcel of land involved herein is the West half (W½) of Northwest Quarter (NW¼) of Section Twenty-seven (27) and the East half (E½) of the Northeast Quarter (NE¼) of Section Twenty-eight (28) Township One hundred Fifty-eight (158) Range Seventy-two (72) Pierce County, North Dakota.

The complaint alleges that on the 23rd day of April 1949, the plaintiffs executed and delivered to E. A. Stiller, Shreveport, Louisiana, an oil and gas lease on the land described in the complaint and that said lease provided among other things that the lessee shall pay to the lessor any and all damages to growing crops caused or resulting from drilling operations upon said premises, which said oil and gas lease was assignable by the lessee. The complaint further alleges that from on or about May 24, 1954, and to June 1, 1954 the defendant, Cardinal Drilling Company, a foreign corporation, with the full consent and permission of the lessee or his assignees, drilled a test well on the premises described in the oil and gas lease, said well being more fully described as Lawrence Bell No. 1, being on the SW¼NW¼ of Sec. 27, Twp. 158, North Rge. 72 Pierce County, North Dakota.

That as a result of said drilling operations the well site and approximately 3 acres adjacent thereto were damaged by being traversed by heavy machinery and equipment and by the depositing and littering of debris and refuse in and around said test well site, and by intermingling of the top soil with underlying clay strata, rendering same unfit for agricultural purposes for many years to the damage of the plaintiffs in the sum of $600; that said test well site and the land adjacent thereto contained growing crops which said crops were partly destroyed by the said drilling operations to

the damage of the plaintiffs in excess of $100.

Judgment is then demanded for $700.

The defendant answered admitting its corporate capacity and that it agreed to drill a test well on the premises owned by the plaintiffs as alleged in the complaint. It denies however that any damages resulted to the plaintiffs and alleges that if any damage resulted from the moving of machinery and equipment, such damage was caused by an independent contractor employed for that purpose and that this defendant is not liable therefor.

The case was tried in the district court in the County of Pierce in the City of Rugby, North Dakota to the court and a jury.

When the plaintiffs had rested, and again at the close of all of the evidence, the defendant made a motion for a directed verdict upon the grounds that if any liability existed on the part of the defendant it was by virtue of contract and that there was no evidence adduced by the plaintiffs showing any breach or violation of contract, or that defendant had used more land than was reasonably necessary for the drilling operation; that negligence on the part of the defendant had not been pleaded and that there was no proof of negligence; that the preponderance of the evidence was insufficient to establish a cause of action against the defendant. The plaintiffs resisted the motion and it was denied by the court and the issues were submitted to the jury with instructions to assess separately the damages, if any, to growing crops and to the land. The jury returned a verdict in favor of the plaintiffs in the sum of $60 for growing crops and $300 for land. Judgment was thereafter entered upon the verdict.

Thereafter and in due time defendant made a motion for judgment notwithstanding the verdict, but no alternative motion was made for a new trial. The motion appealed from was made in accordance with Section 28–1510, NDRC 1943 as amended by Chapter 204, S.L.N.D. 1951 which provides:

"In denying a motion for a directed verdict the court shall be deemed to have submitted the action to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict.   *   *   * "

The defendant having appealed from the order denying its motion for judgment notwithstanding the verdict and from the judgment entered thereon, it will be necessary to examine the evidence as to its sufficiency to support the verdict. The defendant assigns the following specifications of error:

1. The evidence in the case was insufficient to justify the verdict rendered against the defendant, by virtue of the proof that the acts complained of, if done, were done by an independent contractor, not by the defendant.

2. That the verdict is contrary to the weight of the evidence in the case adduced, in that it was neither pleaded nor proved that the defendant's use of the land was in excess of that which was reasonably necessary for the drilling of an oil and gas well test.

3. That the verdict is contrary to the instructions given by the court to the jury in that the court instructed the jury that native grasses were not growing crops, and there is no proof that defendant used any land for drilling purposes on which there is located growing crops as defined by the court.

4. That the failure of such plaintiff to plead and/or to prove negligence on the

part of the defendant precludes any right of recovery in this action.

5. That the court erred in failing to direct a verdict for the defendant based on the evidence therein adduced on proper motion by the defendant herein.

6. That the verdict and judgment entered herein is not supported by the evidence.

The following facts are undisputed:

The plaintiff's are the owners of the West half of the Northwest quarter of Section Twenty-seven and the East half of the Northeast quarter of Section Twenty-eight, township one hundred fifty-eight, range seventy-two, Pierce County, North Dakota. In April 1949 the plaintiffs executed and delivered to one E. A. Stiller an oil and gas lease on the said described land together with other lands, and under its terms the lease was assignable by the lessee. Thereafter the defendant Cardinal Drilling Company, under assignment to it by the lessee, or by arrangement with the lessee, agreed to drill a test well on the Southwest quarter of the Northwest quarter of said section Twenty-seven.

The defendant thereupon, procured from the State geologist, a permit to drill the test well on plaintiffs' land as required by Sec. 38–0805 (Supp.1953), NDRC 1943. The defendant also posted a bond designated as a "plugging" bond as required by subsection (d) Section 38–0804 (1953 Supp.), NDRC 1943. Defendant then made arrangement with L. & M. Truck Lines of Williston, North Dakota, to move its drilling equipment to the site of the test well. The location of the test well was on the side of a steep hill and it was necessary to cut it down so as to make a level spot for the drilling outfit. The deepest part of the cut was six feet and the length was approximately twenty-four feet. The area used for the drilling equipment was approximately ¾ of an acre. It was also necessary to cut down the grade around part of the hill so that an access road could be built for moving the drilling equipment to the site of the test well. The cutting down of the hill and the construction of the access road were done by the defendant. The defendant also leveled a spot for the derrick and other machinery used in drilling the well and dug all of the mud pits, sump hole and did other work necessary before drilling of the well could be started. When the test well was completed and the equipment was removed the defendant caused the mud pits, sump hole and other excavations to be properly filled and leveled off to the satisfaction of the plaintiffs.

The plaintiffs introduced evidence tending to show that the defendant caused heavy machinery such as trucks and caterpillar tractors to travel over a three acre field seeded partly to clover and partly to durum wheat. That by reason thereof the growing crops were destroyed; that said tract was littered with debris, and that the top soil was intermingled with underlying clay strata; that only weeds grew thereon and that it became unfit for agricultural purposes for many years. The defendant contended however, that if there was any damage to plaintiffs' land it was done by an independent contractor, the L. & M. Truck Lines, which had contracted to move defendant's drilling equipment to the site of the test well. Hugh Palmer, president of Cardinal Drilling Company testified that defendant hired L. & M. to move the equipment to the test well; that defendant had no control of the operations of L. & M. Truck Lines or its employees in moving the drilling equipment; that the transportation of the drilling equipment to the test well was controlled by the L. & M. Truck Lines.

The plaintiff, Lawrence Bell, testified that there were tracks and deep ruts caused by trucks and caterpillar tractors that had been driven over and had been parked on said tract, but he did not know who were the owners of the trucks and caterpillars. Bill Gray, a witness for the defendant, testified that he was an employee of the defendant,

250

that he directed the drilling operations of the Bell test well. He employed one Coghlan to cut down the hill referred to and to level off a spot for the site of the Bell test well. Coghlan also constructed the access road leading to the site of the test well under instructions from Bill Gray. He testified that the only caterpillar tractor used on the site of the Lawrence Bell test well was the one used by Coghlan. On cross examination Bill Gray testified as follows:

"Q. Now there was some talk about a caterpillar pulling a truck in the north forty of this eighty, with the tractor, you know anything about that? A. No, sir, I don't know I did not see tractor out there, I did not go out and examine tracks.

"Q. If there were caterpillar tracks out there you would not know how they got there? A. No, sir.

"Q. There was not any other caterpillar on that forty acre tract except one that had been—was used by Coghlan in the work you had outlined for him? A. No, sir.

"Q. So that if there were caterpillar tracks out there, as this testimony was given, then it very likely was done by that caterpillar? A. That is right.

"Q. Then, Mr. Gray, this caterpillar did not belong to the L. & M. Company then? A. No, sir."

Dan Van Swearingen a neighbor of plaintiffs engaged in farming and trucking, testifying for the plaintiffs, stated that prior to or during the drilling of the Lawrence Bell test well he saw well drilling machinery under control of the defendant and used directly in connection with the drilling operation at the test well; that this machinery was on a semi-trailer stuck on the crop land and that a caterpillar tractor was pulling it out; that the tracks made in pulling this machinery extended approximately over the entire length of the 40 acre tract.

In its second specification of error defendant asserts that plaintiffs have neither pleaded nor proved that the land used by the defendant was in excess of that which was reasonably necessary for the drilling of the test well. The right of the defendant to use the land necessary for its drilling operations would depend upon the terms of the lease. The record shows that by stipulation of the parties the lease, together with the assignment thereof, was introduced in evidence as plaintiffs' exhibit D, but the lease is not in the record, nor is it included in the certificate of the clerk of court transmitting the record to the supreme court. However the trial court in the instructions to the jury referred to the lease and its provisions as follows:

"The oil and gas lease, together with assignment thereto was admitted in evidence upon the stipulation of the parties, and whatever remedies the lessors of any real property may have against their immediate lessee, they also have against the assignees of the lessee, for any cause of action accruing while they are such assignees. The tenant, or lessee, being the defendant in this case, has the right by virtue of the lease to make certain uses of the real property leased thereby, such as the right of ingress and egress, and to the reasonable use of the surface as to all matters defined in the granting clause of the lease. The lessee has the right to use as much of the surface of the lands, and to use it in such a manner as is necessary to effect the purpose of its lease, but shall treat the leased premises in such a manner that no substantial injury shall be done to it through any negligence or wilful misconduct on its part."

The oil and gas lease was the contract between the parties. Under its terms the defendant had the right to use so much of the land as was reasonably necessary in the operation of drilling the test well. There is no allegation in the complaint that defendant used more land than was reason-

ably necessary for the drilling operation. Nor is there any evidence in the record that defendant used more land than was reasonably necessary. Plaintiffs' witnesses Roy Bennett and Dan Swearingen testified that the 80 acre tract involved was reduced in value because of the damage caused by the defendant to the area used in drilling the well; there is no evidence showing any damage in excess of that contemplated by the lease. When defendant had completed drilling the test well in accordance with the terms of the lease the area used in drilling was filled in and leveled off to the satisfaction of the plaintiffs. On direct examination the plaintiff Lawrence Bell testified that he had a conversation with a representative from the Geological office with respect to his claim against the defendant. We quote from his testimony:

"Q. And when you approved what had been done so far as the cleaning up after the drilling of the well and as to this question from the representative of the Industrial Commission, you were referring only to actual drill site or tract, also some at mud pits? A. That's right, yes.

"Q. Did you state to this representative that you were satisfied as to other damage that the drilling had done to your property? A. No, then we were talking, wanted to know what kind of job fellows with bulldozer done, told him that's about as good as could be done."

 The jury was instructed to assess separately the damage to growing crops and damage to the land. The jury found for plaintiffs on both issues. Under the terms of the lease which was the contract between the parties the defendant had the right to use so much land as was reasonably necessary in drilling the test well. The plaintiffs neither pleaded nor proved that defendant used more land than was reasonably necessary, and therefore they are not entitled to damages on that ground. However, we think the evidence is sufficient to sustain the verdict in so far as it allows damages for destruction of growing crops. We conclude therefore that the judgment should be modified by deducting therefrom the amount found by the jury for damage to the land, and as so modified the judgment is affirmed.

GRIMSON, C. J., and JOHNSON, BURKE and MORRIS, JJ., concur.