*In re* EARLE.

EARLE *v.* EARLE.

1. HABEAS CORPUS—CUSTODY OF CHILD—CHANGE OF CIRCUMSTANCES.
   The best interests of the child, now 9 years of age and involved in habeas corpus proceeding in this State by father to enforce visitation rights accorded him by Indiana decree of divorce, are controlled by the child's present welfare as affected by any change of circumstances, not the terms of the Indiana decree, the doctrine of *res judicata* nor comity of courts.

2. EVIDENCE—CUSTODY OF CHILD—ATTORNEY AND CLIENT.
   It was ethical and proper for trial court in habeas corpus proceeding to receive testimony of attorney relating to the circumstances under which "proper legal action" was to be instituted following prior habeas corpus proceeding relative to custody of child.

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur, Habeas Corpus § 80.
[2] 25 Am Jur, Habeas Corpus §§ 78, 151.
[3] 58 Am Jur, Witnesses § 858.
[4] 20 Am Jur, Evidence § 585.
[5] 20 Am Jur, Evidence § 457.
[6] 17A Am Jur, Divorce and Separation § 841.
   Alienation of child's affection as affecting custody award. 32 ALR2d 1005.
[7] 14 Am Jur, Costs § 11.

3. SAME—HYPOTHETICAL QUESTIONS—WAIVER OF DEFECTS.

Defects in hypothetical questions were waived, where such deficiencies were not pointed out, although opportunity to add pertinent facts was afforded; the test being whether the question presented the facts fairly.

4. SAME—HEARSAY—DESCRIPTION OF STATE OF MIND.

Receipt of hearsay testimony in habeas corpus proceeding wherein father sought to enforce his visitation rights pursuant to Indiana decree of divorce did not constitute error, where such testimony was offered as to state of mind of declarants themselves and descriptive of the unhealthy climate in which the child was being reared, rather than of the facts therein asserted.

5. SAME—HEARSAY—ADMISSIBILITY—RELEVANCY.

The hearsay rule does not apply to an extrajudicial utterance that is offered, not as an assertion to evidence the matter asserted but without reference to the truth of the matter asserted, admission thereof being then controlled by its relevancy.

6. DIVORCE—CUSTODY OF CHILDREN—ALIENATION OF CHILD'S AFFECTION FOR PARENT.

Custody of boy, now 9 years of age, is permitted to remain with mother, except as modified decree of Indiana divorce accorded father 7 weeks custody in summer and 1 week of Christmas vacation period, subject to an improvement of his home climate in that there is to be a cessation of process of alienating the boy's affection for his father.

7. COSTS—CUSTODY OF CHILDREN—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are allowed in habeas corpus proceeding by father to enforce provisions of Indiana decree of divorce relative to custody of boy, now 9 years of age, where custody which had been awarded mother is conditionally affirmed and father is accorded only part of the relief sought, since neither party has prevailed in full.

Appeal from Muskegon; Smith (Raymond L.), J., presiding. Submitted January 7, 1959. (Docket No. 19, Calendar No. 47,492.) Decided April 13, 1959.

Habeas corpus by Laurence H. Earle, II, directed to Beverly J. Earle to enforce visitation rights with his child as incorporated in foreign divorce decree,

and to determine whether child's welfare now warrants change in custody. Order enforcing visitation rights. Defendant appeals. Plaintiff, in respect to change of custody, cross-appeals. Affirmed.

*Parmenter & Forsythe* (*Robert L. Forsythe,* of counsel), for plaintiff. ·

*Allaben, Davids & Massie,* for defendant.

SMITH, J. The case before us concerns visitation rights with respect to a child of divorced parents.

The petitioner herein, Laurence H. Earle, II, and respondent Beverly J. Earle, were married, and divorced, in Indiana. The decree* awarded custody of the minor child of the Earles, herein referred to as Laurie, then approximately 3 years of age, to respondent herein. The decree permitted the father "to have said child with him from the 1st day of March to the 15th day of March and from the 1st day of November to the 15th day of November, and for the month of July, each year."

The next legal step in this unhappy chronology was a petition by the mother alleging that since the date of the prior order the father had remarried and was living with his new wife and stepchild; that such new wife had no interest in the petitioner's child and presumptively gave preference to her own child; that on each occasion when petitioner's son was returned he was "nervous, apprehensive, has lost weight and appetite, wets his bed, and is generally disturbed mentally and physically." It was further alleged that petitioner's medical advisors believed (in which belief petitioner concurred) that such visits were detrimental to the child and should be discontinued. It was inferred that little or no

---

* Dated February 11, 1953.—REPORTER.

difficulty had been experienced with the child's visits until petitioner's remarriage.

Thereupon, and on January 19, 1955, the father, petitioner herein, himself petitioned for modification of the order of custody, asserting that the mother "has designedly instituted a program with said child with the sole purpose in mind of defeating the spirit of the order as originally ordered by the court," her intent being, it was alleged, "of discouraging said child from having any desire to be with his father during said visitation privileges. The father, also relying upon medical consultation, asserted that such course was detrimental to the physical and mental health of his son, and prayed for custody himself, "with reasonable visitation privileges" to the mother.

Under date of April 25, 1955, the Indiana court denied each petition, decreeing, however, that since the visitation granted the father for March, 1955, having been denied, he, the father, might have the child in May of 1955.

In November of 1955 the father and mother stipulated that as a result of the child's enrollment in kindergarten, and his anticipated enrollment in regular school commencing September, 1956, that modification of the decree of divorce "with respect to custody and visitation   *   *   *   should be determined in the discretion of the court." The court, pursuant thereto, and in order to permit the father "an equal period as provided in such decree," provided in lieu thereof that the father should have "possession and control" of the child 1 week during the Christmas vacation and 7 weeks during the summer vacation, to begin on the 10th day of June of each year.

Subsequent thereto the father has had his son for only 2 visits, one in the summer of 1955, the other at Christmas, 1955. In June of 1956 it became apparent to the father that his summer visit

with the boy would be denied him. Accordingly he applied to the circuit court for the county of Muskegon, through a habeas corpus proceeding, to have the provisions of the Indiana decree enforced. The matter was concluded by stipulation providing for an order of dismissal, it being contemplated that psychiatric help would be sought looking towards a solution of the problem. This procedure, even if availed of (which is not clear), accomplished nothing. Consequently another petition for writ of habeas corpus (the one now before us) was filed in the circuit court, the petitioner alleging·that he was entitled to visitation rights as ordered, that his former wife had refused and was persisting in a refusal to abide by the terms of the order, praying that the court inquire into the cause of the restraint and detention of the boy, and further petitioning a determination by the court as to whether or not the child's best interests would be served by awarding permanent custody to him. Issues were joined and a lengthy hearing was had. At its conclusion the court declared the child a ward of the court, retaining jurisdiction for the purpose of amending, revising, or revoking its judgment, re-enunciated the terms of the Indiana decree, held that respondent was unlawfully detaining the child, directed respondent to turn over the child to petitioner for visitation, and denied respondent's request for stay in order to permit the filing with this Court of an application for leave to appeal. This Court, on August 8, 1957, entered an order granting respondent leave to appeal, upon application theretofore made,. and continued in effect our order, theretofore made, staying proceedings pending appeal. Respondent and appellant is before us on appeal in the nature of certiorari, complaining of the enforcement of the stipulated Indiana decree, petitioner and appellee on a cross appeal, complaining, in effect, of

denial of his prayer for permanent custody, subject to visitation rights.

The determination of the case before us requires, in turn, the determination of the best interests of the child involved. In this we are not bound by the terms of the Indiana decree, should the child's welfare dictate otherwise. Neither the doctrine of *res judicata* or comity of courts compels a contrary result. Neither can make binding, for the indefinite future, provisions later determined, because of a change in circumstances, to be inimical to a child's best interests. *Ex parte Peddicord,* 269 Mich 142; *In re Leu,* 240 Mich 240.

Complaint is made of various evidentiary matters. It is asserted that the testimony of Robert L. Forsythe, an attorney of record in the case, was improperly admitted. His testimony related only to the circumstances under which, in accordance with the stipulation of the parties in the former habeas corpus proceeding, "proper legal action" might thereafter be instituted. There was nothing unethical or improper in taking counsel's testimony for such limited purpose.

It is asserted, also, that certain hypothetical questions addressed to petitioner's medical expert were improperly phrased and inadmissible. The issue as to such a question is not, however, whether it includes all of the facts but whether it presents the case fairly. *Herbeck* v. *Germain,* 144 Mich 157, 160. We note, also, that counsel for appellant was given opportunity to add pertinent facts but declined to do so. Under these circumstances, as accurately stated by Goldstein (Trial Technique, § 509, p 458), objections "to be availing, must specifically point out the deficiencies so that counsel propounding the question may have an opportunity to remedy the defects; otherwise the defect is waived."

In addition, it is urged that the court érred in receiving "hearsay" testimony, both from Lois Earle, petitioner's wife, as to statements made by the child (*e.g.*, "Larry [his father] is bad, he bites and hurts Mommie,") and from petitioner himself as to alleged statements made by respondent's father, relating to petitioner's parentage. These statements were not offered as evidence of the facts therein asserted, either as to petitioner's biting, or his parentage, but as to the state of mind of declarants themselves, each being of probative value concerning what the trial chancellor described as the "unhealthy climate" in which the petitioner's son was being reared. In the receipt of such testimony there was no error.

"The true nature of the hearsay rule is nowhere better illustrated and emphasized than in those cases which fall without the scope of its prohibition. The essence of the hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their nontestimonial use.

"The theory of the hearsay rule (*ante,* § 1361) is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the hearsay rule." 6 Wigmore on Evidence (3d ed), § 1776, pp 177, 178.

There is only one issue of substance before us and that is whether the best interests of the child are served by a continuation of the custody and visita-

tion provisions of the Indiana decree entered in accordance with the stipulation of the parties. Our primary difficulty has been with the matter of the natural mother's continued custody.

This case is an extreme example of our law's inadequacies in the solution of the social problem here presented. The conclusion of the trial judge, abundantly justified on the record, makes this clear. With all the parties before him, the warring parents, the in-laws, the child, and the doctors, he concluded, in terms the more eloquent for their simplicity, that due to the mother's deliberate efforts the son is growing up despising his father and that his natural affection for his father is being destroyed. Were these distortions of affection the result of the father's brutalities or the son's perversions, as sometimes happens, they would be tragic enough, but here the destruction and the contempt are the result of a deliberate plan of alienation, its success obvious to the judge before whom the melancholy characters passed. "It is all too evident," he holds, "that Beverly and her parents have succeeded in their plans to alienate the affections of Laurie for his father." Military leaders often repeat that their weapons, in the final analysis, are men. This child, likewise, is being employed as a weapon, at a cost to him so dreadful as to shock the conscience. Yet with this situation apparent to the trial judge and commented upon by him, the child has been in the exclusive custody of the mother since December of 1955, as the various legal steps have taken their ponderous course. It is time to bring to an end the practices being inflicted upon this boy.

Many courts, faced with this spectacle of deliberate alienation of a child's affection, have not hesitated to change its custody. The cases are collected in 32 ALR2d 1005. Yet, *per contra,* in this case the child is of such an age (though fast taking leave

thereof) that a mother's proper care is necessary and desirable, and there is the further consideration of the possible deleterious effect upon him, particularly in the light of the circumstances of this case, of a change so drastic. We share with the trial judge, also, the feeling that the mother's love for her child may yet furnish the solution. It may be asking more of human nature than it is capable of giving to require this mother willingly to send her only son into the household of the woman with whom (we are here using respondent's language) the father had been "associating improperly" while married to respondent, and whom he later married. It may be asking too much of human nature that respondent's father (in whose home the boy lives) abandon, in his own terms, his "loathing" of his former son-in-law. But even if these feelings cannot be exorcised they may and must be controlled externally to the degree that they do not exert a corrosive effect upon the child. The son must have no more occasion to assert when his father attempts to take him for his visit, that "You are trying to hurt Mommie." It takes no expert to conclude (as did Dr. Simmons) that a child "is placed in an untenable situation in that if he demonstrates loyalty to his father he is disloyal to his mother and vice versa."

Our conclusions in this matter parallel those of the trial judge, who closed his opinion with the following words:

"What does little Laurie need? The answer is obvious: respite from his present home climate. The present negative approach of ignoring his father or any mention of his existence is not a proper approach. There must be a positive approach to the problem already created. Beverly and her parents must make amends for the ideas already planted in Laurie's mind. There must be no more of this 'you

·must go because the judge says so,' or 'you'll soon be old enough to refuse to go.'

"The future welfare of Laurie Earle dictates this court's decision. His tantrums are caused by Beverly and her parents. They should not profit by their misdeeds. They alone have the means of making amends to Laurie. Any child psychiatrist can tell them how to do it. If they love Laurie they will do it. This court will give them that opportunity by allowing Laurie to remain there under the Indiana decree subject to the visitation rights in petitioner therein provided.

"Respondent, Beverly J. Earle, should forthwith surrender to petitioner the child Laurie. Petitioner may have custody of Laurie until September 2, 1957, when he should be returned to his home in Muskegon. This provision is in lieu of that afforded petitioner by the decree of divorce and because the passing of time prevents him from the enjoyment of its provisions. In the future the provisions of the Indiana decree as amended shall be adhered to by this respondent. It is so ordered. Her failure to carry out these provisions will certainly affect the future decision of this court. Costs may be taxed by petitioner.

"The court places its confidence in the mother and her parents because they have declared their love for Laurie. They will now have the opportunity to show the extent of this love."

If the court's admonitions and abjurations fall upon deaf ears (which we trust will not be the case) recourse may be had for other and more effective relief. The trial judge has ample powers to work out such additional periods of visitation for the son with his father as may seem necessary and desirable in order that father and son may become reac-quainted after this long period of separation.

Affirmed.   No costs, neither party having prevailed in full.

DETHMERS, C. J., and KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.

CARR, J., concurred in affirmance.