Frederick W. KINGDON, Petitioner
and Appellant,

v.

Mathilda S. SYBRANT, Respondent
and Appellant,

and

Lotus Irene Korner, Contestant
and Respondent.

Civ. No. 8459.

Supreme Court of North Dakota.

April 26, 1968.

864

Johnson, Milloy & Eckert, Wahpeton, for appellants.

Lewis & Bullis, Wahpeton, for contestant and respondent.

PAULSON, Judge.

This case is before us on an appeal from the district court in a will contest action. The testator's will had been upheld in the county court of Richland County, North Dakota, and the contestant appealed to the district court. The appeal was tried before a jury, which found the will invalid because of a lack of testamentary capacity on the part of the deceased, Fred W. Kingdon. The proponents of the will are Frederick W. Kingdon and his sister Mathilda S. Sybrandt. The contestant is Lotus Irene Korner, the legal daughter of the decedent by his first wife. Following the verdict, the proponents moved for judgment notwithstanding the verdict or, in the alternative, for a new trial, both of which motions were denied. It is from the denial of these motions that proponents appeal.

The testator had married his first wife, Jessie Corkill Kingdon, in 1893, and the contestant was born in 1896. The decedent was, at this time, operating several businesses in the town of Cullom, Illinois, including a hardware and an implement business. The decedent left Cullom and moved to North Dakota in 1922 and commenced the farming operations which were continued by him for the balance of his working years. On February 22, 1924, his first wife, Jessie Corkill Kingdon, secured a divorce from the decedent on the ground of desertion. The decedent married his second wife, Marie Reinhard Kingdon (the mother of the proponents), on July 9, 1924. The decedent continued to operate his business properties in Cullom until approximately 1946, and the contestant worked in her father's business in Cullom from 1919 to the early 1940's. The decedent's second wife, Marie, died on March 31, 1964, and the will in question was executed on April 1, 1964. By this will the contestant, Lotus Irene Korner, was left the sum of $1,000, and the balance of the estate was to be divided between the proponents of the will,

the two children born of decedent's marriage to Marie Reinhard Kingdon.

The decedent's attorney testified that the decedent had told him (the attorney) on at least two occasions that the contestant, Lotus Irene Korner, was not a child of his body. The decedent had further stated that, in fact, the contestant was the child of his first wife and Sig Boeman, a livery stable operator who had resided in Cullom, Illinois, at the time of the events in question. He further stated that in later years it was common talk that his wife and Sig Boeman were having an affair and he also stated that the doctor who had delivered the contestant had told the decedent that while contestant's mother was on the delivery table she had stated: "Sig, you shouldn't have done it." The decedent also made a statement to a Mr. Julius Larson to the effect that the contestant was not the daughter of his body. The contestant offered evidence through numerous deposition witnesses to the effect that there was no scandal in the community of Cullom concerning a relationship between Jessie Corkill Kingdon and Sig Boeman. The proponents' evidence of an opposite nature was ruled inadmissible by the trial court, with the exception that one witness, John A. Barner, was allowed to testify that Jessie Corkill Kingdon's reputation for morals in the community was not all that it should have been.

At the time these proceedings were commenced, the contestant was 70 years of age and had two grown children, who were self-supporting. The proponent Frederick W. Kingdon was 39 years old and had four children, aged 17, 15, 12, and 5. The proponent Mathilda S. Sybrant was 37 years old and had five sons, aged 14, 12, 9, 8, and 2.

■ The original answer of the contestant alleged that the will was invalid because the testator lacked mental capacity due to an insane delusion, and because the will was procured by undue influence. The undue-influence count was dismissed by the court and there was no cross-appeal

from that dismissal; therefore, the question will not be considered by us. Auer v. Frank, 227 Cal.App.2d 396, 38 Cal.Rptr. 684, 8 A.L.R.3d 1108 (1964); Reuland v. Independent Dist. of White Lake, 64 S.D. 621, 269 N.W. 484 (1936); In re Congdon's Estate, 74 S.D. 306, 51 N.W.2d 877 (1952); 5 C.J.S. Appeal and Error § 1300, pp. 209–211. The dismissal of the claim of undue influence occurred during the trial. Because we grant a new trial for reasons hereinafter set forth and do not pass upon the correctness of the trial court's ruling, the new trial shall be held on all the issues, including the issue of undue influence.

■ Several of the principles which will be initially employed in the decision in this case will be set forth here. First, there is a presumption that a testator was sane at the time of the execution of his will, until the contrary appears by competent proof. Edwardson v. Gerwien, 41 N. D. 506, 171 N.W. 101 (1919); Stormon v. Weiss, 65 N.W.2d 475 (N.D.1954). Second, where one is contesting proof of a will on the basis that the testator was suffering from an insane delusion, it is not sufficient to introduce evidence which tends to prove that the testator was possessed of such a delusion, but there should be further proof by the contestant that such delusion has no foundation in fact or in probability, in order to show that the delusion is wholly a product of the imagination. Edwardson v. Gerwien, supra. Third, the question of whether a testator is laboring under an insane delusion which materially affects the will is generally a question of fact. Winn v. Dolezal, 355 P.2d 859 (Okla.1960); In re Felgar's Estate, 207 Okla. 310, 249 P.2d 455 (1952). Fourth, to defeat a will on the ground that the testator lacked testamentary capacity because of an insane delusion, it is not sufficient to establish that the testator was the victim of such a delusion but the evidence must go further and establish that the will itself was the product of that delusion, and that the testator devised his property in a way which, except for that delusion, he would not have done. In re Williams' Estate, 207 Okl. 209, 249 P.

2d 94 (1952); In re Wheeling's Estate, 198 Okla. 81, 175 P.2d 317 (1946); In re Mason's Estate, 185 Okla. 278, 91 P.2d 657 (1939).

■ We will first consider the proponents' appeal from the denial of the motion for judgment notwithstanding the verdict. Where such a motion has been denied, the evidence must be considered in a light most favorable to the party in whose favor the verdict was rendered [Bell v. Cardinal Drilling Company, 85 N.W.2d 246 (N.D.1957); Lund v. Knoff, 85 N.W.2d 676, 67 A.L.R.2d 1110 (N.D.1957)], and such motion should not be granted unless the moving party was entitled to judgment as a matter of law. Chicago, M. St. P. & P. RR. Co. v. Johnston's Fuel Liners, Inc., 130 N.W.2d 154 (N.D.1964). On an appeal from a judgment notwithstanding the verdict, the only grounds which will be considered will be those which were assigned on the motion for a directed verdict. Hanson v. Fledderman, 111 N.W.2d 401 (N.D.1961).

We have carefully examined the evidence in this case, and the court's rulings pertinent to such motion for directed verdict, and have concluded that the proponents would not have been entitled to a directed verdict at the close of the trial. Therefore, the trial court did not err in denying proponents' motion for judgment notwithstanding the verdict.

A review of the transcript does not indicate that the court made any statement to the opposing counsel at the time of the delivery of the instructions wherein the court asked for exceptions to be noted and the period of time to be allowed counsel to note such exceptions, either by written objections or by inserting such objections in the record. The judgment roll discloses that the court submitted written instructions to counsel, since certain written objections were presented. However, the record does not disclose that the court required counsel to take exceptions pursuant to Rule 51(c), North Dakota Rules of Civil Procedure. Therefore, counsel did not waive rights to the taking of exceptions to the instructions, as set forth in Rule 51 (c), N.D.R.Civ.P.

We will next consider the contention that the trial court erred in not granting the proponents' motion for a new trial. For reasons which will be stated in the following paragraphs, we agree with this contention.

Portions of the trial court's instructions to the jury read:

"I further instruct you that there is a presumption of chastity as to every person, and that chastity must be overcome by believable evidence.

"I further instruct you that the law of the State of North Dakota provides that any child born in wedlock is legitimate, and that such a presumption must be overcome by believable evidence."

■ We conclude that both of these instructions, jointly and severally, were inherently prejudicial to the proponents' case, as the question of the fact of the chastity of Jessie Corkill Kingdon was not an issue in this case, nor was the actual fact of the legitimacy of Lotus Irene Korner an issue. The issues in this case were the beliefs of the decedent, Fred W. Kingdon, concerning the chastity of Jessie Corkill Kingdon and the legitimacy of Lotus Irene Korner. The instructions quoted place the burden upon the proponets of proving that, in fact, Jessie Corkill Kingdon was unfaithful, and, therefore, that Lotus Irene Korner was illegitimate. Such burden the proponents should not bear and are not required to bear. It is no part of the proponents' defense of the will that either chastity or legitimacy did not exist as a matter of fact. The above instructions cannot help but put the proponents in the position of having to overcome the presumption of chastity and the presumption of legitimacy in order for the jury to uphold the will.

The trial court, in its instructions to the jury, further stated:

"I further instruct you that the fact that the testator Fred W. Kingdon at the time he made a will in 1959 or before that time or subsequent thereto recited to others that Lotus Irene Korner was not a daughter of his body, was competent for the purpose of proving that he then believed such to be the facts, but on the other hand such statements to such effect made by the testator are wholly valueless for the purpose of proving that such an incident that he recited occurred which did not make the contestant Lotus Irene Korner a child of his body."

This instruction, if standing alone, would probably not be prejudicial error, but in light of the previously discussed instructions it again tends to put the burden of proving the legitimacy of Lotus Irene Korner on the proponents of the will. Such a burden, we again point out, is not upon the proponents as the factual question of the legitimacy of Lotus Irene Korner is not in issue in this case, and a decision upholding the will could not, in any event, affect the status of Lotus Irene Korner as legitimate or illegitimate.

The proponents claim that the trial court erred in failing to overrule objections to the admissibility of evidence concerning the existence of rumors of illicit relationship between Jessie Corkill Kingdon and Sig Boeman. This testimony was offered by the proponents, both through deposition witnesses and live witnesses. In perusing the record, it becomes apparent that the reason for sustaining objections to the admission of rumor evidence which was relied upon by the trial court was that such evidence is not reliable proof of the chastity of Jessie Corkill Kingdon. The trial court obviously concluded that there was a proper method to prove reputation for chastity and the introduction of rumor evidence was not such a method.

The theory of the hearsay rule is that when a human utterance is offered as evidence of the truth asserted in it, the credit of the assertor becomes the basis of the inference, and therefore the assertion can be received only when made upon the stand and subject to the test of cross-examination. In re Earle's Petition, 355 Mich. 596, 95 N.W.2d 833 (1959).

However, where it becomes relevant to show that a certain statement or declaration was made, regardless of the truth or falsity of the statement or declaration itself, such proof is not hearsay and should be admitted. It is evidence of what is sometimes called a verbal or operative fact. Keller v. Wonn, 140 W.Va. 860, 87 S.E.2d 453 (1955). See also Russell v. Geis, 59 Cal.Rptr. 569 (Cal.App.2d 1967). The primary question to be determined in this case is whether the decedent, Fred W. Kingdon, had any evidential basis that the contestant, Lotus Irene Korner, was not a child of his body. The existence of rumors as to an affair between Jessie Corkill Kingdon and Sig Boeman would be relevant insofar as the presence of such rumors could have affected the decedent's belief and given substance thereto. Since the basis of the contestant's case was the absence of such rumors, which established that the decedent had no basis for his belief, it is only just that the proponents could offer any evidence of the existence of such rumors in favor of their case. Thus, the trial court's reasoning in excluding testimony of this sort is not tenable, because the proponents were in no way attempting to prove that such an affair was an actual fact, or that Lotus Irene Korner was actually illegitimate. They were attempting to prove that such rumors existed and that, therefore, such rumors could form the basis for the belief of the testator that Lotus Irene Korner was not his child.

The proponents also claim that the court erred in sustaining several objections to the testimony of one of the subscribing witnesses to the will, before finally allowing said subscribing witness to testify as to the mental competency of the de-

cedent. Although we feel that this refusal to allow the subscribing witness to testify as to the decedent's competency when first asked was not prejudicial error in itself, we wish to indicate that a subscribing witness to a will may give his opinion as to the mental capacity of the testator without stating the facts upon which it is based or otherwise establishing his qualifications to judge the testator's mental capacity. Stormon v. Weiss, 65 N.W.2d 475 (N.D. 1954); In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103 (1935).

■ The proponents claim that the court erred in not including an instruction to the effect that a testator may reasonably take into consideration the relative financial standing of his children and may logically discriminate in favor of those less favorably situated financially, as against those comparatively better off. The trial court in its memorandum decision pointed out that the reason for the denial of this instruction was that the three children here involved were proved to be relative financial equals. The trial court reached its conclusion in part by taking judicial notice of the value of the North Dakota land held by the proponents. While we question the propriety of taking judicial notice of the value of land, we wish to further point out that there are other factors to be considered in determining relative financial equality. The court did not seem to take into account the relative ages of the parties, nor the status of the dependents of the parties. These factors are important in determining relative financial standing, regardless of the equality of actual assets. We believe that the state of the evidence in this case warranted submitting the question to the jury in the form of an instruction as requested by the proponents.

We conclude that the cumulative errors as indicated above denied the proponents-appellants the substance of a fair trial and, therefore, we grant the motion for a new trial. The proponents, as grounds for a new trial, have urged other alleged errors which are commingled with the errors previously discussed. Since a new trial must be granted because of the errors in the trial heretofore considered, and there is no reasonable probability of any of the issues raised by these specifications of error arising upon such new trial, they will not be considered.

The order denying the motion for judgment notwithstanding the verdict is affirmed. The order denying the motion for a new trial is reversed and a new trial is granted.

TEIGEN, C. J., and STRUTZ, KNUD-SON and ERICKSTAD, JJ., concur.