LARIMORE EAST VIEW DEVELOPMENT, INC., a North Dakota Corporation, and Robert G. McLain, Plaintiffs and Appellants,

v.

CITY OF LARIMORE, North Dakota, a Municipal Corporation, Defendant and Appellee.

Civ. No. 9500.

Supreme Court of North Dakota.

Feb. 1, 1979.

Rehearing Denied Feb. 23, 1979.

Caldis & Arneson, Grand Forks, for plaintiffs and appellants; argued by Gordon W. Caldis, Grand Forks.

Murray, Olson, Larivee & Bohlman, Grand Forks, for defendant and appellee, argued by Richard W. Olson, Grand Forks.

ERICKSTAD, Chief Justice.

Larimore East View Development, Inc., and Robert G. McLain appeal from a judgment in district court that dismissed their complaint of unjust enrichment against the City of Larimore. The appellants (hereinafter "Developers") brought an earlier lawsuit against the City of Larimore (hereinafter "City") that challenged the City's annexation of their development and the district court found the annexation void. The court, however, awarded the City $19,427.33 in the first lawsuit on the theory that the Developers were unjustly enriched by the construction of a sanitary sewer lift station and force main by the City to serve the development. When the City commenced new annexation proceedings and legally annexed the development, the Developers brought this lawsuit contending that the City was unjustly enriched because it now had the money and the sewer improvements. We affirm.

Most of the relevant facts are found in the district court's findings of fact in the first lawsuit and are a part of the record in this case:

"II.

"By deed dated March 5, 1969 and recorded May 8, 1970, Plaintiff Robert G. McLain (hereinafter called McLain) became the owner of a 38 acre tract of land (herein called East View) located contiguous to the northeast corner of the then city limits of the City of Larimore, North Dakota (herein called the city), intending to subdivide the same into commercial and residential lots and to sell the lots at a profit.

"III.

"McLain provided $8,333.33 of the $25,000.00 purchase price for East View and he borrowed the balance ($8,333.33 each) from Duane Mutch and then City Councilman Woodrow Davidson. McLain remained the sole owner of East View until April of 1971 when he conveyed the same to Larimore East View Development, Inc., a corporation organized by McLain, Duane Mutch, Woodrow Davidson and Jamison Larimore, III. Ralph S. Oliver was the attorney for McLain and Larimore Eastview Development, Inc.

"IV.

"In approximately February of 1970, McLain entered into informal discussions with the City concerning his need for water and sewer services to his proposed development and his desire that the area be annexed to the City.

"V.

"At the request of McLain, the City Council held a special meeting on March 6, 1970 at which time McLain outlined his plans for the development of East View and asked the City for water and sewer service. The City informed McLain that before this service would be provided he would have to bring his property into the City. McLain agreed to cause the property to be annexed to the City. The City retained R. J. Fiala, a Consulting Engineer, to prepare plans and specifications and estimates of cost to the City of providing water and sewer service up to the boundaries of East View. Fiala had previously been retained by McLain to draw the plat layout for streets, public easements and plans and specifications for sewer and water line services within the boundaries of East View.

"VI.

"On May 14, 1970, the City Council passed a resolution drafted by their City Attorney, Ralph S. Oliver, which had as its purpose the annexation of East View to the City. This resolution was presented to the City Council by Ralph S. Oliver on behalf of his client, McLain. However, the resolution and notice of the time and place of the hearing and determining the sufficiency of any written protest against the proposed annexation was not published, no hearing was held on the matter and the resolution was not recorded in the office of the Register of Deeds, Grand Forks County, North Dakota, all as required by the applicable North Dakota statutes. No written petition for annexation of East view was ever filed with the City.

"VII.

"The plat of Eastview was duly recorded in the office of the Register of Deeds, Grand Forks County, North Dakota on June 3, 1970, and thereafter the legal descriptions on all legal documents describing lots in East View refer to the same as being in the City of Larimore.

"VIII.

"McLain, Mutch and Jamison Larimore, III made numerous appearances before the City Council from early 1970 through 1975 with various requests concerning East View, including requests that the City proceed with the awarding of contracts for sanitary sewer lift station and force main to serve East View, applications for building permits, requests for street lighting and requests for street maintenance.

"IX.

"The plans and specifications for providing sewer and water service to East View were finalized and included the installation of a force main and a lift station and the acquisition of certain easements to permit these installations. Contracts for these improvements were awarded and the work was completed in late 1971 at a total cost to the City of $19,427.33. Since completion of these improvements and through and including this date, all improved properties in the East View Addition are connected to and served by the sewer and water system of the City.

"X.

"At approximately the same time as McLain commenced his negotiations with the City concerning East View, work was proceeding in the City of Larimore on a contract between the City and the State Highway Department for extensive improvements to Towner Avenue in the City (the same being the main business street). The City's share of the cost of this improvement was to be paid by special assessments against the benefited property and for that purpose the City had in 1969 created

"Street Improvement District # 2" which included all of the property within the then City limits.

"XI.

"Although a large open drainage ditch ran along the east side of Towner Avenue along what was to be the future westerly boundary of East View, this portion of Towner Avenue was not included in the original plans for improving Towner Avenue as the same was not then in the City. A meeting was arranged with the State Highway Department and on May 25, 1970, McLain, Mayor Poppenhagen, Auditor Kagel and Councilman Richards met in Bismarck with State Highway Department representatives, Chief Engineer Robert Bradley and M. W. Christensen. The Highway Department representatives were informed that East View had now been taken into the City and replatted and the City asked that the design of the improvement to Towner Avenue be revised to eliminate the ditch section and install curb and gutter and storm sewer along the now westerly boundary of East View between 4th Street and 7th Street.

"XII.

"On June 1, 1970, the City Council passed a resolution expanding the 'resolution creating Street Improvement District # 2' and 'resolution declaring work necessary' to include a change in work order to provide for curb and gutter, and storm sewer along the east side of Towner Avenue from 4th Street to 7th Street (the westerly boundary of East View). This work proceeded and was eventually completed at a cost to the City of $9,797.32. The intent of the resolution of June 1, 1970 was to authorize the additional work under the contract with the North Dakota State Highway Department and to expand the Street Improvement District # 2 to include the recently annexed East View Addition. This resolution was not published and no protest hearing was ever held on the same.

"XIII.

"The City included East View on its real estate tax rolls beginning with the year 1970 and prior to the commencement of this action in May of 1975, all property owners in East View had submitted to the jurisdiction of the City, paid their real estate taxes, including those levied by the City, and all parties by their actions, including voting in City elections, requesting City services, applying to the City for building permits, requesting zoning changes from the City Council, treated East View Addition as being a part of the City.

"XIV.

"At the specific request of Plaintiff Robert G. McLain and subsequently the Plaintiff Larimore East View Development, Inc., the City deeming East View to be validly annexed to the City, expended the sum of $19,427.33 for the construction of a sanitary sewer lift station and force main which expenditure increased the value of East View and enriched McLain and Larimore East View Development, Inc. in the amount of $19,427.33.

"XV.

"The City has provided street lighting, police protection, fire protection, and some limited street maintenance to East View since 1970, but this Court finds that the cost thereof is too speculative upon which to base an award of damages to the City.

"XVI.

"Evidence was introduced in this action concerning a gravel bill rendered by Plaintiff Woodrow Davidson to the City dated March 1, 1974 in the amount of $6,110.00 for gravel spread upon the streets in East View by Woodrow Davidson. This Court finds that this gravel was spread upon the streets of East View by Woodrow Davidson and that it benefited and improved the streets in East View. The Court further finds, however, that the cost thereof is not an obligation of the City.

"XVII.

"In January, 1975 the cost of Street Improvement District # 2 as expanded June 1970, was spread against all property in the improvement district which included all of the City of Larimore, including East View. On April 7, 1974 McLain and Plaintiff Woodrow Davidson (a member of the City Council from April, 1970 through April, 1974) appeared before the City Council protesting the special assessments against East View."

From these findings of fact, the district court in the first lawsuit made the following conclusions of law:

"1. The attempted annexation of Larimore East View Addition to the City of Larimore is void, the procedures prescribed by the applicable North Dakota statutes not having been complied with and the Court concluding that the doctrine of equitable estoppel or annexation by general acquiescence as urged by the Defendant City of Larimore is not applicable to this case.

"2. The attempted inclusion of Larimore East View Addition as a part of the City of Larimore Street Improvement District # 2 is void, and the property in Larimore East View Addition is not liable for any assessments spread against it for such improvements.

"3. The attempted annexation of Larimore East View Addition being void, the City was and is without jurisdiction to levy real estate taxes against the real estate in Larimore East View Addition and all property owners are entitled to a refund from the City of all real estate taxes and assessments collected from them by the City of Larimore on such real estate. . . .

"4. The Defendant City of Larimore is awarded damages for unjust enrichment against the Plaintiff Robert G. McLain individually and against Larimore East View Development, Inc. in the amount of $19,427.33.

"5. Defendant City of Larimore's Counterclaim is deemed amended to conform to the proof and in accordance

therewith this Court holds the gravel bill for $6,110.00 dated March 1, 1974 rendered to the City by Woodrow Davidson is not the legal obligation of the City of Larimore."

Thus, as a result of the first lawsuit, the City recovered from the Developers $19,427.33 on the theory of unjust enrichment, but it was required to refund all special assessments and real estate taxes collected from the owners of East View Addition. It was denied compensation for city services that were provided to East View Addition. Davidson was denied payment for his bill for gravel.

The district court in the first case issued its findings of fact, conclusions of law, and order for judgment on September 21, 1976. Prior to the issuance of the amended judgment on October 29, 1976, however, qualified electors of East View Addition petitioned the City for annexation pursuant to Chapter 40–51.2, N.D.C.C. The Larimore City Council filed the petition for annexation on October 4, 1976, and set November 1, 1976, as a hearing date for the first reading of the annexation ordinance. The annexation ordinance was read on November 1, 1976, and November 8, 1976. Following the second reading of the ordinance on November 8, 1976, it was approved by the City Council. The ordinance was subsequently filed on November 10, 1976.

The judgment in the first case was satisfied by the Developers in January, 1977, and by summons and complaint dated February 25, 1977, they commenced the present action against the City. The district court dismissed the Developer's complaint with prejudice, and this appeal followed.

Two issues are present in this appeal: (1) Were the merits of this case finally and unalterably determined by the first lawsuit?, and (2) If not, was the City unjustly enriched by the "alleged" acquisition of the sewer improvements following the valid annexation of East View Development?

The City argues that the issue of unjust enrichment was decided by the district court in the first case in favor of the City

and cannot be re-litigated here. The Developers argue, however, that the valid annexation of East View occurred after the judgment in the first case and therefore a new issue is presented. The Developers also argue that there were additional parties involved in the first action; therefore, res judicata principles do not apply. The City replies that "annexation of East View to the City did not create a new legal situation in which a cause of action for unjust enrichment on the part of the Developers suddenly blossomed." The City argues that it was the owner of the sewer improvements before the valid annexation; thus, the annexation did not alter the parties' legal relationship, nor provide a new issue to be litigated. It also argues that because the City and Developers were involved in both cases, the fact that there were additional parties in the first case does not prohibit the application of res judicata. It contends that the Developers were aware of the impending annexation and did not act because the annexation was beneficial to them.

■ We have consistently recognized that issues litigated in a previous action between the same parties are conclusively settled by that judgment, and may not be relitigated in a subsequent action between the same parties, regardless of the form the issue may take in the subsequent action. *See, e. g., Perdue v. Knudson,* 179 N.W.2d 416, 421 (N.D.1970); *Heasley v. Glinz,* 142 N.W.2d 606, 607 (N.D.1966).

The question to be determined here is whether or not the valid annexation of East View Addition by the City created a new issue that was not judicially determined in the previous action.

■ We believe that it did not. Although the $19,427.33 that the City received in the first action is presumably reimbursement for the cost of construction of the lift station and force main, it does not follow from the subsequent legal annexation that the Developers are now entitled to be reimbursed the same amount. Because the De-velopers did not appeal from the judgment in the first action and the time for appealing therefrom has expired, the judgment in that action is res judicata of the issues settled there. It is our view that although there are fewer parties involved in the second action than in the first action, the main parties in both actions are identical. The fact that there were additional parties in the first action does not foreclose the application of res judicata. *Van Brode Milling Co. v. Kellogg Co.,* 113 F.Supp. 845, 847 (D.Del.1953); 50 C.J.S. Judgments § 773. *See also City of Chariton v. J. C. Blunk Construction Company,* 253 Iowa 805, 112 N.W.2d 829 (1962).

■ The Developers were not misled by any provision of the judgment in the first case, nor, to our knowledge, by any action on the part of the City. They had no right to assume that a legal annexation would not be subsequently initiated and completed.[1] Having failed to appeal therefrom, they cannot now raise again the issue settled there.

Irrespective of the res judicata issue, we believe that the Developers have not been taken advantage of; for, had the initial annexation proceeding been legally carried out, they would have incurred not only the cost of special improvements through special assessments, but also the higher taxes of the City. The Developers enjoyed many City services prior to the second annexation for which they have been forever excused.

■ The remaining issue is the issue of costs. The City argues that the Developers' appeal is frivolous and that the City should be awarded damages and costs, including reasonable attorney fees of $2,000 pursuant to Rules 38 and 39, N.D.R.App.P. This is not an appropriate case for the award of costs or attorney's fees. *See Blue Arm v. Volk,* 254 N.W.2d 427 (N.D.1977); *State v. Flohr,* 259 N.W.2d 293 (N.D.1977); and *Danks v. Holland,* 246 N.W.2d 86 (N.D. 1976).

---

1. From the filing of the second petition for annexation, almost a month before the filing of the amended judgment in the first case, the Developers had ample notice that such an annexation was likely to take place.

The judgment of the district court is affirmed.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.