[Civ. No. 4165. Fifth Dist. Mar. 29, 1979.]

CHRISTINA JOANNE RUDDOCK, a Minor, etc.,
Plaintiff and Appellant, v.
DARREL LEON OHLS, Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Plaintiff and Appellant.

Strauss, Neibauer & Anderson and John J. Hollenback, Jr., for Defendant and Respondent.

OPINION

CREEDE, J.*—

### STATEMENT OF THE CASE

Respondent Darrel Ohls and his wife, Diane E. Ohls, were divorced in Oregon on September 21, 1971. In its divorce decree, the Circuit Court of

*Assigned by the Chairperson of the Judicial Council.

the State of Oregon, for the County of Linn, action No. 39484, entitled "Darrell L. Ohls, Plaintiff, vs. Diane E. Ohls, Defendant," made a finding that respondent "is not the father of the minor child, CHRISTINA JOANNE RUDDOCK, born March 24; 1969, and support for said child is hereby denied." Both parties appeared in person with counsel at a trial of the action on June 29, 1971, at which evidence was heard and considered by the court. The decree further stated, ". . . that from the evidence it is possible to find that plaintiff is Christina's father, but that to so declare, in the absence of certainty, would be to do Christina a great disfavor, and the Court not being inclined to thrust upon an innocent child a father who denies such relationship; . . ." The child was not a named party to the Oregon action nor was a guardian ad litem appointed. The decree suggests the issues of paternity and child support were fully litigated, but the record does not include a summary of the evidence before the Oregon court.

█ █ Christina Ruddock was born on March 24, 1969.[1] Five months later, her mother married respondent Darrel Ohls.

The present action was instituted on June 17, 1977, in the Superior Court of Stanislaus County when Diane E. Ohls, the mother of Christina Ruddock, petitioned the court to appoint a guardian ad litem in order to bring an action to establish that respondent was the father of Christina. A guardian ad litem from the Stanislaus County District Attorney's office was appointed and a complaint filed to establish the parent-child relationship between appellant and respondent and seeking support pursuant to Welfare and Institutions Code section 11479 and Civil Code section 7000 et seq. Respondent pleaded the Oregon decree and moved to strike the complaint asserting paternity had been adjudicated previously in Oregon. The court granted the motion and appellant Christina

---

[1]Respondent, in his trial brief supporting his motion to strike the complaint, stated that the maiden name of Christina's mother was not Ruddock, but rather this was the name of a male person with whom the mother had sexual relations at approximately the time the child was conceived. Respondent on appeal contends that the child's birth certificate lists the mother as Diane Evelyn Manning and the father as William Frank Ruddock. However, this document is not part of the record on appeal.

Respondent requests this court to take judicial notice of the birth certificate "as an official record of the County of Stanislaus." This is not the type of record that can be the subject of judicial notice under Evidence Code section 452. Furthermore, respondent has not provided this court or the record in the proceeding below with even a nonauthenticated copy of this document. (Evid. Code, §§ 453, subd. (b), 459; *Arnold* v. *Browne* (1972) 27 Cal.App.3d 386, 393, fn. 3 [103 Cal.Rptr. 775]; *Terzian* v. *California Cas. Indem. Exch.* (1969) 3 Cal.App.3d 90, 98 [83 Cal.Rptr. 255].) The only document in the record is the Oregon decree. Thus, respondent answers petitioner's collateral attack by engaging in an impermissible reargument of the evidence before the Oregon court.

Ruddock, through her guardian ad litem, appeals from the order striking the complaint.

### According Full Faith and Credit to the Oregon Decree of Nonpaternity, It Is Binding Upon the Parties but Does Not Resolve the Independent Rights of the Minor Child

■ California is required to recognize the Oregon judgment as determinative of respondent's nonpaternity of appellant Christina Ruddock as between the parties to the Oregon divorce action, Darrell L. Ohls (respondent) and appellant's mother, Diane E. Ohls. Christina was not joined as a party nor was a guardian ad litem appointed.

"It is well settled that once a valid judgment has been rendered it must be accorded full faith and credit by every other court within the United States even though the cause of action upon which the judgment was based is against the law and policy of the state in which enforcement is sought. [Citations.]" *(Biewend* v. *Biewend* (1941) 17 Cal.2d 108, 111-112 [109 P.2d 701, 132 A.L.R. 1264]; *McGuire* v. *Brightman* (1978) 79 Cal.App.3d 776, 782 [145 Cal.Rptr. 256]; *Thorley* v. *Superior Court* (1978) 78 Cal.App.3d 900, 907-908 [144 Cal.Rptr. 557].) Therefore, the determination of the Oregon court is binding upon the courts of California if Oregon had jurisdiction over the parties and subject matter, the parties were given reasonable notice and an opportunity to be heard, and the court rendered a final judgment. *(Miller* v. *Superior Court* (1978) 22 Cal.3d 923, 930 [151 Cal.Rptr. 6, 587 P.2d 723].) A party confronted with the bar of a foreign judgment has the right to show that it was in excess of jurisdiction or affected by fraud if those issues were not expressly litigated in the foreign state. *(Craig* v. *Superior Court* (1975) 45 Cal.App.3d 675, 680 [119 Cal.Rptr. 692], and cases cited therein.)

■ The issue presented is essentially not one of jurisdiction but of res judicata with the concomitant consideration of identity of parties, issues and privity. The Oregon court had personal and subject matter jurisdiction over the husband and wife, but lacked personal jurisdiction over the nonparty minor child. Respondent seeks to bind the minor by the judgment on the basis the mother was acting in a full representative capacity with complete identity of interest. Under California law children who are not parties to a divorce action still may be bound by some aspects of a marital dissolution proceeding if the interests of the child are adequately represented by one of the parents.

In *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942 [126 Cal.Rptr. 805, 544 P.2d 941] the children of divorced parents brought an independent action against their father for past child support and misappropriation of trust assets. A property settlement agreement of the parents was incorporated in the decree of divorce providing that the father would pay the difference between $84 a month received by each child from a testamentary trust established by their paternal grandfather and $125 a month, with corresponding future credit on the support obligation if the trust income exceeded the agreed amount of child support. The court held the divorce decree foreclosed relitigation of the validity of long-standing support orders because the mother had acted in a representative capacity with identity of interest to those of the children and in all respects represented the "same legal right." (*Id.,* at p. 951.)

The interest of a mother in proving paternity may be coextensive with the interest of the child to have paternity determined and support provided in some circumstances. There is nothing in the record showing that the Oregon proceeding was one in which, to use the language of *Armstrong,* appellant's mother being entrusted with her care and maintenance acted as "a proper representative of [her] interests" (*Armstrong, supra,* at p. 951). If a judgment determining the existence of the parent-child relationship is to be binding upon the nonparty minor child, respondent has the burden of proving the minor was a party to the action or in some other manner is bound prospectively by the findings and judgment in the parents' marital dissolution action.

A MINOR CHILD IS NOT FORECLOSED FROM ESTABLISHING THE
EXISTENCE OF THE PARENT-CHILD RELATIONSHIP BY A DECREE
OF MARITAL DISSOLUTION IN WHICH SHE HAS NOT JOINED AS
A PARTY IN INTEREST .

A parent may not waive on behalf of children amounts reasonably due for present or future support, but between themselves an agreement is binding. (*Hunter* v. *Hunter* (1959) 170 Cal.App.2d 576, 583 [339 P.2d 247].) While parents by their conduct or agreement cannot impair a child's right to reasonable support, the parties may by agreement or waiver determine the manner in which reimbursement is received for sums already expended for their support in the past. (*Graham* v. *Graham* (1959) 174 Cal.App.2d 678, 684 [345 P.2d 316]; *Kaminski* v. *Kaminski* (1970) 8 Cal.App.3d 563, 566-567 [87 Cal.Rptr. 453].) In contrast to enforcement of a child's right of a present or past support obligation, the establishment of the parent-child relationship is the most fundamental

right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights. To hold a child bound prospectively by a finding of nonpaternity in a divorce action in which the child was not a party would be to allow the conduct of the mother to foreclose the most fundamental right a child possesses in our system of jurisprudence.

Considering present-day realities, not every question of paternity raised and decided in a marital dissolution action involves a full adversary hearing on the subject. It is not uncommon for such an issue raised in the pleadings to be decided pro forma because the mother is reticent to be subjected to scrutiny about past dalliances. The emotional experience and psychological trauma of having one's personal life unveiled can act as a deterrent. Guilt feelings over the dissolution, favorable concessions on support or property can influence the vigor with which the paternity question is presented to the court. (See *Everett* v. *Everett* (1976) 57 Cal.App.3d 65, 71 [129 Cal.Rptr. 8].) The availability of aid to families with dependent children (AFDC) may relieve the financial motivation for energetic pursuit of the responsible father. Lastly, the mother may have ambivalent feelings about having the child tied to a past relationship or about having to deal with the father on visitation and support. These considerations would require a review of the record to determine whether the mother acted in a proper representative capacity, and while not requiring a reweighing of the evidence, would nevertheless be a form of collateral attack.

We hold that in dealing with the prospective rights of a minor child to establish paternity, the child, if not formally a party, is not bound by a paternity determination in a marital dissolution action. The court is not required to be unaware of the prevalence of nonmarital and extramarital relationships in today's society (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 683 [134 Cal.Rptr. 815, 557 P.2d 106]). To bind the child by the discretion or indiscretion, as the case may be, of the mother in choosing counsel or trial tactics in a divorce action without formal joinder, is to confer upon the mother the right to determine a child's most fundamental right next to life itself.

A fair reading of the Oregon decree indicates appellant's mother appeared personally in the divorce proceeding and was represented by counsel; she requested the court to determine that respondent was the father of Christina and award child support. Oregon law required the mother to establish paternity by producing evidence in corroboration of

her own testimony. (*Matter of Marriage of Gridley* (1977) 28 Ore.App. 145 [558 P.2d 1277, 1279].) The court made a specific finding that respondent was not the father of Christina. Under California law, the rules of res judicata are not to be defeated in a subsequent action " 'by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a second trial on the same cause between the same parties.' " (*Rynsburger* v. *Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269, 278 [72 Cal.Rptr. 102].) "If it appears that a particular party, although not before the court in person, is so far represented by others that his interest received actual and efficient protection, the decree will be held to be binding upon him." (*Ibid.*)

By merely pleading the Oregon decree respondent has not established that the interests of the child received actual and efficient protection with the mother acting in a representative capacity. The Oregon judgment shows only that the mother asserted her right to obtain child support based on an allegation of paternity as distinguished from adjudicating the independent rights of the child.

### THE OREGON JUDGMENT IS NOT SUBJECT TO COLLATERAL ATTACK.

Our Supreme Court in *Armstrong* distinguished between attacking a judgment based on an error in excess of jurisdiction in contrast to errors of substantive law which are within the court's jurisdiction and cautioned that collateral attack will not be allowed where the court has fundamental jurisdiction of the person and subject matter even though the judgment is contrary to statutory law or the weight of the evidence.

Appellant supports a collateral attack on the parents' Oregon judgment by suggesting that the Oregon court committed one or more errors of law in determining the case.[2] Christina challenges the propriety of the standard of proof applied and urges that the record of the proceeding did not eliminate the applicability of a presumption of paternity. It also is argued that the judgment of nonpaternity was not based on the evidence in contrast to a reflection of the judge's personal philosophy on the subject. ■ However, if the original court rendering the judgment had jurisdiction, an error of law or fact by that court generally cannot be raised in a collateral attack on the judgment. (*Armstrong* v. *Armstrong,*

[2]Under Oregon law (Ore.Rev. Stat. § 109.125) filiation proceedings may be initiated by any of the following: "(a) A mother of a child born out of wedlock, . . . (c) The duly appointed and acting guardian of the child, conservator of his estate or a guardian ad litem, if the guardian or conservator has the physical custody of the child and is providing support for the child." (Ore.Rev. Stat. § 109.125, subds. (a), (c).)

*supra*, 15 Cal.3d at pp. 950-951; see Rest.2d Conf. of Laws, §§ 105-106; *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 797 [126 Cal.Rptr. 225, 543 P.2d 593].) Thus, these contentions, even if true, do not support appellant's position on appeal.

It is well settled under Oregon law "that the paternity of a child may be determined in the context of a variety of legal proceedings, including a suit for the dissolution of a marriage, in addition to the statutory 'filiation' proceedings (ORS 109.125 through 109.235)." (*Matter of Marriage of Gridley, supra*, 558 P.2d at p. 1279, fn. omitted; see also *Clarkston* v. *Bridge* (1975) 273 Ore. 68 [539 P.2d 1094].)[3] The Oregon courts have noted, however, that because the issues involved are precisely the same regardless of the context in which the question of paternity is litigated the procedural rules incorporated into the filiation statutes, specially designed to balance the interests of the parties involved, ought to be uniformly applied in every case, i.e., jury trial as in filiation proceedings and the statutory requirement of corroboration. (*Gridley, supra*, 558 P.2d at p. 1279.)

The California courts have declined to apply the doctrine of res judicata in "rare cases" where to do so rigidly would "defeat the ends of justice or important considerations of policy." (*Greenfield* v. *Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1].) The California Supreme Court has noted that this so-called "*Greenfield* Doctrine" has been often criticized and is of "doubtful validity," although it has not been expressly overruled. (*Slater* v. *Blackwood, supra*, 15 Cal.3d at p. 796.) The *Greenfield* rule will be applied where the record shows the lack of a "fair opportunity to litigate" the issue of support. (*Hight* v. *Hight* (1977) 67 Cal.App.3d 498, 503-505 [136 Cal.Rptr. 685].)

Appellant argues this case is one which requires the application of the *Greenfield* rule, basing this contention on California's policy favoring legitimization of children born out of wedlock. In a California action to determine paternity, Christina may be entitled to the rebuttable presumption set forth in Civil Code section 7004, subdivision (a)(1), (3) or (4). The public policy of Oregon on the subject of paternity and legitimization is identical to that of California.[4] It must be presumed that the

---

[3]Circuit Courts of Oregon have jurisdiction to determine paternity of a child born out of wedlock in a Uniform Reciprocal Enforcement of Support Act proceeding. (Ore.Rev. Stat. §§ 109.060. 109.070. 110.005 et seq.. 110.021, subd. (2), 110.071, 110.201.)

[4]Oregon has not adopted the uniform parentage rule. Prior to the enactment of the Uniform Parentage Act, California, like Oregon, recognized that paternity could be determined in several procedural forms, i.e., actions for dissolution, support or filiation.

Oregon court was applying the public policy of Oregon which is fully consonant with that of California. Under the guise of the *"Greenfield Doctrine,"* appellant seeks to engage in a collateral attack on the judgment by reexamining the evidence, application of law and the decision process of the Oregon court. We reject such attack on the efficacy of the Oregon decree but such does not preclude a consideration of the existence of the requisites of res judicata, i.e., identity of parties and their interests.

## A Determination of Nonpaternity in a Marital Dissolution Action Is Not Res Judicata as to the Independent Rights of a Minor Child Without Formal Joinder of the Child.

Civil Code section 33 provides: "A minor cannot give a delegation of power, make a contract relating to real property, or any interest therein, or relating to any personal property not in his immediate possession or control." Under Civil Code section 196a the court has jurisdiction to enforce performance of the support obligation to the same extent as in a suit for dissolution of marriage. ■ Although under section 196a the mother of a child may file an action in her own name, the child is the real party in interest in a suit to establish paternity and obtain support. (*Everett* v. *Everett, supra,* 57 Cal.App.3d 65; *Stargell* v. *Stargell* (1968) 263 Cal.App.2d 504 [69 Cal.Rptr. 715]; *Daniels* v. *Daniels* (1956) 143 Cal.App.2d 430 [300 P.2d 335].) The status of the child as real party in interest tolls the statute of limitations on the issue of paternity during the minority of the child. (*Perez* v. *Singh* (1971) 21 Cal.App.3d 870, 872 [97 Cal.Rptr. 920].) ■ A father could not object to a judgment finding paternity on appeal because a guardian ad litem had not been appointed for the child. Under such circumstances it is presumed that the mother acted in a manner of such a guardian. (*Van Buskirk* v. *Todd* (1969) 269 Cal.App.2d 680, 687 [75 Cal.Rptr. 280].)

The child has important rights of her own. (*In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 856 [146 Cal.Rptr. 26].) ■ It is settled law in this state that a minor's right to support and maintenance by his father may not be limited or contracted away by his parents. (*Everett* v. *Everett, supra,* 57 Cal.App.3d at p. 69; Civ. Code, § 7006, subd. (d); *Fernandez* v. *Aburrea* (1919) 42 Cal.App. 131, 132 [183 P. 366]; see also *Elkind* v. *Byck* (1968) 68 Cal.2d 453, 457 [67 Cal.Rptr. 404, 439 P.2d 316]; *Schumm* v. *Berg* (1951) 37 Cal.2d 174, 183 [231 P.2d 39, 21 A.L.R.2d 1051]; *Hunter* v.

*Hunter, supra,* 170 Cal.App.2d at p. 583; *Allen* v. *Allen* (1956) 138 Cal.App.2d 706, 708 [292 P.2d 581].)

A mother is not acting as an agent of a child nor in a representative capacity in entering into an agreement not approved by the court providing support to be paid by a father who acknowledged paternity. *(Schumm* v. *Berg, supra,* 37 Cal.2d at p. 183.) The natural guardianship of a parent extends to the person of a child and not its property. *(State of California* v. *Superior Court* (1978) 86 Cal.App.3d 475, 482 [150 Cal.Rptr. 308].) A minor may not prosecute a claim through the courts without the appointment of a guardian ad litem, a parent having preferential status in applying for such status. A parent cannot compromise or settle the claim of a minor without court approval. (Code Civ. Proc., § 372.) A court may refuse to decide the issue of paternity in a dissolution action if the child is not formally made a party to the action. *(Daniels* v. *Daniels, supra,* 143 Cal.App.2d at p. 433.) Any ruling upon the issue of paternity in a dissolution action cannot affect the rights of the child unless the divorce action is converted into a filiation proceeding under Civil Code section 7000 et seq., formerly section 231, in California or Oregon Revised Statutes 109.125 through 109.235 in Oregon. Although there are some differences in form, Oregon and California law is substantially similar on the subject of the various proceedings in which paternity may be determined. (See *Fox* v. *Hohenshelt* (1976) 275 Ore. 91 [549 P.2d 1117].)

"The ordinary divorce does not fall in the category of one maintained on behalf of the child. It is to be noted parenthetically that there runs all through the law of domestic relations a basic principle that husband and wife cannot impair or sacrifice the welfare of the child, legitimate or illegitimate, by any voluntary agreement between them. (See, as examples of this doctrine, *Berry* v. *Chaplin,* 74 Cal.App.2d 652 [169 P.2d 442]; *Lewis* v. *Lewis,* 174 Cal. 336, 341 [163 P. 42].)" *(Daniels* v. *Daniels, supra,* 143 Cal.App.2d at pp. 435-436.)

In *Gonzales* v. *Pacific Greyhound Lines* (1950) 34 Cal.2d 749, 753 [214 P.2d 809], the Supreme Court held a divorce decree determining the husband was not the child's father and had no obligation to provide support was not admissible in a subsequent action for wrongful death of the father, stating: "While the interlocutory decree stood as a final adjudication between the husband and wife on the issues there submitted [citations], plaintiff was not a party to that litigation and he was not bound by the determination of his status therein. [Citation.]"

A filiation action, whether under Civil Code section 196a or former Civil Code section 231, now sections 7006 and 7015, as part of the Uniform Parentage Act, must be brought on behalf of the child by the mother or general guardian or guardian ad litem. The trial court in both Oregon and California can appoint a general guardian or guardian ad litem, and in many cases there is such joinder. (See *Daniels* v. *Daniels, supra,* 143 Cal.App.2d at p. 435; *Wong* v. *Young* (1947) 80 Cal.App.2d 391, 394 [181 P.2d 741].)

Consonant with these principles, the Uniform Parentage Act (Civ. Code, §§ 7000-7018), not in effect when the divorce action was filed in Oregon and adopted in California by Statutes 1975, chapter 1244, section 11, page 3199, originally provided that the child shall be made a party to the action, now permissive if the child is under 12 years old (Civ. Code, § 7008, amended by Stats. 1977, ch. 207, § 1.)

"Of course, bringing a paternity action in the name of the minor child through a guardian ad litem is a proper way of proceeding, since it is specified by statute, . . ." (*Van Buskirk* v. *Todd, supra,* 269 Cal.App.2d at p. 685.) ██ The pleading and procedure followed should be liberally construed in favor of the child, as real party in interest, and viewed from its four corners in determining whether the mother was acting in a representative capacity. (*Id.,* at p. 687.) Civil Code section 7008 was viewed as codifying the decisional law set forth in *Van Buskirk.* (See, e.g., *Perez* v. *Department of Health* (1977) 71 Cal.App.3d 923, 927 [138 Cal.Rptr. 32].)

We will next examine the primary cases upon which appellant relies. *Adoption of Stroope* (1965) 232 Cal.App.2d 581 [43 Cal.Rptr. 40] involved a petition for adoption by a stepfather seeking to adopt his wife's natural daughter alleging that her former husband was not the father and requesting a declaration that the mother was entitled to sole custody. A prior divorce action determined that the parties, the child's mother and her former husband, had two children (the subject of the adoption) the issue of their marriage. The court held that since the child was not a party to the divorce action she was not bound by the determination in that proceeding. "The divorce decree [was] not res judicata as to her, nor is she estopped thereby from contesting the question of her legitimacy." (*Stroope, supra,* at p. 585.)

A converse situation existed in *Adamson* v. *Adamson* (1962) 209 Cal.App.2d 492 [26 Cal.Rptr. 236] where the plaintiff wife alleged in a

divorce complaint there were no children who were the issue of the marriage. The wife testified at a default hearing the marriage produced no children, and the court so found in its decree. In a subsequent proceeding for modification, the wife alleged that in fact one child was born before the filing of the dissolution action and another afterward. The husband asserted the issue of paternity was res judicata and the wife was seeking to relitigate the matter of paternity which had been determined, being the subject of a final judgment. There was no contention of extrinsic fraud. The court held the dissolution decree was binding on the husband and wife but not upon the children, saying there was no mutuality in the application of res judicata. So far as the children's rights are concerned, "It is to be kept in mind, however, that the children involved here are not foreclosed from instituting an action to have the husband declared to be their father and for an order for support and maintenance. In other words, the doctrine of res judicata cannot be invoked in this case by the husband against the children, even though the children can under the circumstances invoke the doctrine against him." (*Adamson* v. *Adamson, supra*, at p. 501.)

In *Armstrong*, the court held that privity exists where the person involved is " ' ". . . so identified in interest with another that he represents the same legal right." ' (*Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 318 . . . see also 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 226, p. 3359.)" Under the circumstances in *Armstrong* the children's mother was considered ". . . entrusted with their care and custody and was a proper representative of their interests." (*Armstrong* v. *Armstrong, supra*, 15 Cal.3d at p. 951.) The court weighed all of the circumstances in respect to the interests of finality of judgments. *Adamson* and *Stroope* were distinguished on the basis prospective rather than retroactive relief was sought. (*Armstrong, supra*, at p. 952.)

 In the absence of a full and fair adversary hearing resulting in a judgment on the merits on the issue of paternity a finding of nonpaternity is not binding on the child particularly if collusion is potentially involved or there is a stipulation or agreement by which the issue is decided with less than complete evidence before the court. (*Everett* v. *Everett, supra*, 57 Cal.App.3d 65.)

The child has no control over the litigation, choice of tactics or right to appeal. (See *Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].) It was, therefore, error to grant the motion to strike the complaint on the basis that the minor's rights had been adjudicated in

the prior proceedings. The decree of marital dissolution standing alone is insufficient to support a conclusion that the Oregon court was exercising jurisdiction over the child or that the mother was acting in a "proper representative capacity" so as to bind the child by the judgment.

In summary, the cases prior to *Armstrong* suggest that the alleged father is in a "heads I win, tails you lose situation." If there is a finding of paternity the judgment is considered to the child's best interests and inures to his benefit. Procedural defects such as failure to join the child as a party or lack of a guardian ad litem will not relieve the father from the effects of the judgment. In contrast, many cases have afforded the child a second chance to establish paternity and obtain support by reasoning res judicata is inapplicable because the prior determination in the dissolution action was binding only on the husband and wife and not upon the child who is not a party. The public policy favoring the establishment of paternity and requiring fathers to assume their support obligations is a highly beneficial one, but equally salutary is the interest in the finality of judgments. If either party wishes to insure finality to the paternity question in the marital dissolution action, they may do so by taking the simple step of joining the child, thus accommodating both policies in a single proceeding. The issue of paternity determined in a marital dissolution action is not binding upon the child unless joined as a party. (Civ. Code, §§ 4363, 4606, 7008; Cal. Rules of Court, rules 1250, 1251, 1254; Ore.Rev. Stat. § 109.125, subd. (c).) ▮ In contrast, in an action for support (Civ. Code, § 196a) or under the Uniform Parentage Act (Civ. Code, §§ 7000-7018) formally brought on behalf of the child, the judgment may be shown to be binding without actual joinder if the mother acted in a proper representative capacity.

The trial court correctly reasoned that if the issue of paternity raised and fully litigated in a marital dissolution action were not res judicata there would never be finality or legal certainty concerning the status of the family members. ▮ However, the record contains only the divorce decree indicating Christina had not been joined with the appointment of a guardian ad litem as could have been done under Oregon Revised Statutes 109.125. The trial court's finding that Christina is bound by the Oregon judgment is not supported by substantial evidence in the record before us.

We have considered whether the rule of *Armstrong* should be applied prospectively to Christina's individual rights by determining whether from the four corners of the divorce action it can be said the mother was

acting as a proper representative of the child with a complete identity of interest in seeking to fix paternal responsibility in a full and fair trial of the issue where the child's legal rights were effectively and efficiently represented. *Armstrong* distinguished the prospective rights of a child to support from a challenge to a long-standing past support order. To examine the record for such "identity of interest" and proper representation to bind the child prospectively to the paternity determination would in essence involve a review by the forum court of the evidence, procedure and tactics in the prior action, thus going behind the judgment and by whatever name engaging in a collateral attack. ▮ The preferred and well-established rule which we adopt is that in the absence of joinder the prospective rights of a minor child to establish the parent-child relationship are not foreclosed under the doctrine of res judicata or collateral estoppel by a judgment between the mother and alleged father in a marital dissolution action.

The judgment is reversed.

Franson, Acting P. J., and Hopper, J., concurred.