John H. FLAHERTY, Jr., Petitioner and Appellant,

v.

Norine FELDNER, Personal Representative of the Estate of John J. Flaherty, Deceased, Respondent and Appellee.

In the Matter of the ESTATE OF John J. FLAHERTY, Deceased.

Civ. No. 870292.

Supreme Court of North Dakota.

Feb. 25, 1988.

Eaton, Van de Streek & Ward, Minot, for petitioner and appellant, argued by Michael Ward, Minot.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for respondent and appellee, argued by Robert A. Wheeler, Minot.

ERICKSTAD, Chief Justice.

John H. Flaherty, Jr., (John, Jr.) appeals from a Ward County judgment dismissing his petition to set aside informal probate of the will of John J. Flaherty (testator). We reverse and remand.

Elizabeth "Bessie" Rock Matthews married the testator on March 21, 1938, and on April 12, 1938, gave birth to John, Jr. The testator subsequently filed suit for an annulment of the marriage in June of 1939. The testator's complaint alleged that his consent to marry Elizabeth Matthews was procured by fraud, namely, that Elizabeth Matthews fraudulently represented the testator was the father of John, Jr. The testator's annulment was granted in May of 1941. The 1941 judgment granting the annulment declared that the testator was not the father of John, Jr.

During his life the testator executed four wills, all of which denied that he had children. All four wills specifically acknowledged the existence of John, Jr., but stated that John, Jr., was to "receive nothing" from the testator's estate. The testator died on March 17, 1986, at the age of eighty.

In his petition protesting informal probate of the testator's will, John, Jr., asserts that he is the son of the testator and that the testator was laboring under an insane delusion or undue influence and thus lacked the requisite testamentary capacity to execute a will.[1]

The dispositive issue of this appeal is whether or not the doctrine of res judicata prohibits John, Jr., from litigating his claim that the testator is his natural father. John, Jr., was not a party to the action for annulment. The probate court, however, dismissed John, Jr.'s, petition because the 1941 judgment "established that [John, Jr.] was not the son of the [testator]." Thus, the probate court apparently ruled that the doctrine of res judicata prohibits John, Jr., from asserting that the testator is his father. Because we disagree with this analysis by the probate court, we reverse and remand this case to the trial court.

The testator's personal representative and sister, Norine Feldner, concedes the 1941 marriage annulment between Elizabeth Matthews and the testator does not preclude John, Jr., from litigating the question of whether or not the testator is John, Jr.'s, father. Feldner contends, however, that the undisputed facts of this case clearly show that the testator possessed testamentary capacity and thus the trial court properly granted summary judgment, albeit for the wrong reason.

▪ It is undisputed that John, Jr., was born during the 1938 marriage of Elizabeth Matthews and the testator. Thus, John, Jr., is presumed to be legitimate under section 14-17-04(1)(a), N.D.C.C.,[2] and is exempt from the statute of limitations for

---

1. In his petition to set aside the testator's will, John, Jr., also contended the testator omitted John, Jr., from his will based on the testator's mistaken belief that John, Jr., was not his son. John, Jr., has apparently abandoned this argument on appeal.

2. Section 14–17–04(1)(a), N.D.C.C., reads:
   "*14–17–04. Presumption of paternity.*
   "1. A man is presumed to be the natural father of a child if:

   a. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court...."

establishing paternity under section 14–17–06, N.D.C.C.[3] *See Matter of Estate of Sorensen,* 411 N.W.2d 362, 365 (N.D.1987) (section 14–17–06, statute of limitations under Uniform Parentage Act, does not apply to child with statutorily presumed father).

■ John, Jr., is not barred from proving the testator was his father by the statute of limitations or the doctrine of res judicata. Although we have consistently recognized that "issues litigated in a previous action between the same parties are conclusively settled by that judgment," *Larimore East View Development, Inc. v. City of Larimore,* 275 N.W.2d 309, 314 (N.D.1979), it is clear in the instant suit that John, Jr., was not a party to the 1941 annulment proceeding and that his interests were not represented therein. As we said in *Sturdevant v. SAE Warehouse, Inc.,* 270 N.W.2d 794, 798 (N.D.1978), it is a general rule that the doctrine of res judicata "binds only parties to the action in which the judgment was rendered and their privies and does not affect strangers to the judgment who are neither parties nor in privity with a party to the action." *Sturdevant citing Armstrong v. Miller,* 200 N.W.2d 282, 284 (N.D. 1972). We explained in *Heasley·v. Glinz,* 142 N.W.2d 606, 607 (N.D.1966), that when final judgment is rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, such judgment is conclusive of rights, questions, and facts in issue, as to parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. John, Jr., was not a party nor in privity with a party in the 1941 judgment. Accordingly, the doctrine of res judicata is inapplicable.

We note that other jurisdictions have reached the same conclusion on similar facts. For example, in *Matter of Estate of Kinsella,* 120 Mich.App. 199, 327 N.W.2d 437 (1983), the Michigan Court of Appeals ruled that an annulment judgment, which was apparently based on a mother's admission that the decedent was not the father of her children, was not res judicata and could not prevent the children from having an opportunity to prove that the decedent was their father. The children in *Kinsella* sought to prove the decedent was their father for purposes of intestate succession. *See also McNeece v. McNeece,* 39 Colo. 160, 562 P.2d 767, 769 (1977) (issue of paternity raised in divorce proceeding between husband and wife is res judicata in later proceeding between spouses, but child who was not a party to the divorce action could not be bound by paternity determination in divorce action); *Ruddock v. Ohls,* 91 Cal. App.3d 271, 154 Cal.Rptr. 87 (1979), (determination of non-paternity in a marital dissolution action is not res judicata as to the independent rights of a minor child without formal joinder of the child).[4] In accord with these decisions we hold that the doctrine of res judicata does not estop John, Jr., from asserting that the testator is his father, notwithstanding the 1941 judgment which declared that the testator was not the father of John, Jr.

■ Appellee Norine Feldner concedes that John, Jr., should not be estopped from raising the issue of paternity but contends that summary judgment was nevertheless proper because there are no facts to support the assertion that testator's testamentary capacity was destroyed by an insane

---

3. Section 14–17–06, N.D.C.C., reads:

"*14–17–06. Statute of limitations.* An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 14–17–04 may not be brought later than three years after the birth of the child, or later than three years after July 1, 1975, whichever is later. However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until three years after the child reaches the age of majority. Sections 14–17–05 and 14–17–06 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates or to the determination of heirship, or otherwise."

4. North Dakota's adoption of the Uniform Parentage Act, found in chapter 14–17, N.D.C.C., requires that the child be made a party to an action to determine paternity. Section 14–17–08, N.D.C.C., reads in part: "The child shall be made a party to the action."

delusion or undue influence. The probate court's order for summary judgment did not discuss whether or not there are facts to support or discredit John, Jr.'s, contention.

We pointed out in *Kingdon v. Sybrant,* 158 N.W.2d 863 (N.D.1968), and *Matter of Estate of Koch,* 259 N.W.2d 655, 660 (N.D. 1977), that "[w]hether a testator is laboring under an insane delusion which materially affects the will is generally a question of fact...." As we believe that questions of fact should usually be first resolved at the trial level, we reverse and remand this appeal for a factual determination of whether or not the testator was laboring under an insane delusion or executed his will under undue influence. In determining whether or not he was laboring under an insane delusion the trier of facts should consider the following substantive points of law spelled out in *Koch, supra* at 659–660:

> "1. There is a presumption that a testator was sane at the time of the execution of his will, until the contrary appears by competent proof, and where one is contesting proof of a will on the basis that the testator was suffering from an insane delusion, it is not sufficient to introduce evidence which tends to prove that the testator was possessed of such a delusion, but there should be further proof by the contestant that such delusion has no foundation in fact or in probability in order to show that the delusion is wholly a product of the imagination.

> "2. Whether a testator is laboring under an insane delusion which materially affects the will is generally a question of fact, and to defeat a will on the ground that the testator lacked testamentary capacity because of an insane delusion, it is not sufficient to establish that the testator was the victim of such a delusion, but the evidence must go further and establish that the will itself was the product of that delusion and that the testator devised his property in a way which, except for that delusion, he would not have done."

For the reasons stated herein, the judgment is reversed and this case is remanded for proceedings not inconsistent with this opinion and with costs to neither party at this juncture.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring in result.

I reluctantly concur in the result reached by the majority opinion. I do so with the understanding that a parent may, in his will, disinherit a child without laboring under an insane delusion. Here, the testator did not simply omit John, Jr., from his will, he specifically acknowledged his existence but stated he was to receive nothing. Thus, although I agree with the majority opinion that the doctrine of res judicata does not prohibit John, Jr., from asserting that the testator is his natural father, that is far from the end of the matter. Here, because the will specifically recognized John, Jr., but left him nothing, and there is uncontradicted evidence that the testator told a niece that he would not have left John, Jr., any property even if he were his son, John, Jr., must prove not only that he is John Flaherty's son but also that John Flaherty lacked the necessary capacity to make a will, thus permitting John, Jr., to inherit under the statutes governing a decedent who dies intestate.

Although the issue of whether or not a testator lacks testamentary capacity is a question of fact, I assume it requires more than an allegation of an insane delusion to require a trial as to the testator's capacity to make a will. Here, the petitioner gave us few facts from which a conclusion of insane delusion could be gleaned other than that the testator had refused to speak with John, Jr., or have anything to do with him. There are parents who readily acknowledge their offspring but refuse to speak to them or have anything to do with them. Surely that alone does not indicate the parent is suffering from an insane delusion. There

is, however, an indication that because of the granting of the motion for summary judgment, apparently on the doctrine of res judicata, discovery was not complete.

In sum, although I am willing to reverse for the purpose of completing discovery, I am skeptical that the evidence adduced in the record before us to support the claim that the testator suffered an insane delusion would be sufficient to prohibit summary judgment on the issue of testamentary capacity.

GIERKE, J., concurs.